## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF DELAWARE

| | | |
|---|---|---|
| CIT COMMUNICATIONS FINANCE CORPORATION, | : | C.A. No. _____ |
| | : | |
| Plaintiff, | : | REMOVED FROM SUPERIOR |
| | : | COURT, NEW CASTLE COUNTY |
| v. | : | DELAWARE |
| | : | C.A. No. 06C-01-236 (JRS) |
| LEVEL 3 COMMUNICATIONS, LLC and | : | |
| LEVEL 3 COMMUNICATIONS, INC., | : | NOTICE OF REMOVAL OF |
| | : | ACTION UNDER 28 U.S.C. |
| Defendants. | : | § 1441(a) |

### DEFENDANTS LEVEL 3 COMMUNICATIONS, LLC AND LEVEL 3 COMMUNICATIONS, INC.'S NOTICE OF REMOVAL

1.     Level 3 Communications, LLC and Level 3 Communications, Inc. ("Defendants") are the named defendants in the above-captioned action, which was commenced on January 23, 2006, in the Superior Court for the State of Delaware, New Castle County, Civil Action No. 06 C 01236 (JRS). Pursuant to Sections 1441, 1446, and 1452 of Title 28 of the United States Code, Defendants remove this action to the United States District Court for the District of Delaware, which is the judicial district in which the action is pending.

2.     This is an action of a civil nature in which the District Courts of the United States have been given jurisdiction in that it is related to a case under Title 11 of the United States Code within the meaning of 28 U.S.C. § 1334.

3.     The bases for relief asserted by the plaintiff in its action arise out of factual allegations related to a pending bankruptcy proceeding under Title 11.

4.       This Notice of Removal is timely under Section 1446(b) of Title 28 of the United States Code. Defendants received a copy of the summons and complaint by personal service on February 8, 2006. Accordingly, this Notice of Removal is filed within 30 days of Defendants' receipt of the summons and complaint and is timely under 28 U.S.C. § 1446(b).

5.       Pursuant to the provisions of 28 U.S.C. § 1446(a), annexed hereto as Exhibit A to this Notice and incorporated by reference are copies of all the process, pleadings and orders served on Defendants prior to removal of this action.

6.       Written notice of the filing of this Notice of Removal, the exhibits thereto and the Notice of Filing of Notice of Removal was, or will be, given to Plaintiff's counsel by hand delivering to them copies thereof this 24th day of February 2006. A copy of this Notice of Filing of Notice of Removal, which has been or will be filed with the Clerk of the Court of the Superior Court of the State of Delaware, New Castle County, is attached hereto as Exhibit B.

WHEREFORE, Defendants respectfully pray that this action be removed from the Superior Court of the State of Delaware, New Castle County, to this Court.

Dated:  February 24, 2006

BLANK ROME LLP

Steven L. Caponi (DSBA No. 3484)
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801
(302) 425-6408
(302) 428-5016 (Fax)

Attorneys for Defendants
Level 3 Communications, LLC and
Level 3 Communications, Inc.

2

# EXHIBIT A

EFiled: Jan 23 2006 11:05AM EST
Transaction ID 10389304

# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| CIT COMMUNICATIONS FINANCE CORPORATION, | |
| Plaintiff, | Civil Action No. _____ <br> Non-Arbitration <br> Money Damages Requested |
| v. | |
| LEVEL 3 COMMUNICATIONS, LLC and LEVEL 3 COMMUNICATIONS, INC., | **Jury Request:** Plaintiff requests a trial by jury for all issues so triable. |
| Defendants. | |

**THE STATE OF DELAWARE**
**TO THE SHERIFF OF NEW CASTLE COUNTY**
**YOU ARE COMMANDED:**

      To summon the above named defendants so that, within 20 days after service thereof upon defendants, exclusive of the day of service, defendants shall serve upon **Andrew C. Kassner and Howard A. Cohen**, plaintiff's attorneys, whose address is **1100 North Market Street, Suite 1000, Wilmington, DE 19801**, an answer to the complaint (and, if the complaint contains a specific notation requiring the defendant to answer any or all allegations of the complaint by affidavit, an affidavit of defense).

      To serve upon defendants a copy hereof and of the complaint.

Dated: January ___, 2006

                           *SHARON AGNEW*
                           *Prothonotary*

                           _____

                           *Per Deputy*

**TO THE ABOVE NAMED DEFENDANTS:**

      In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint (and, if the complaint contains a specific notation requiring the defendant to answer any or all allegations of the complaint by affidavit, an affidavit of defense), judgment by default will be rendered against you for the relief demanded in the complaint.

                           *SHARON AGNEW*
                           *Prothonotary*

                           _____

                           *Per Deputy*

WM\3446\1

EFiled: Jan 23 2006 11:05AM EST
Transaction ID 10389304

## IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| CIT COMMUNICATIONS FINANCE CORPORATION, | |
| Plaintiff, | Civil Action No. _____ <br> Non-Arbitration <br> Money Damages Requested |
| v. | |
| LEVEL 3 COMMUNICATIONS, LLC and LEVEL 3 COMMUNICATIONS, INC., | **Jury Request:** Plaintiff requests a trial by jury for all issues so triable. |
| Defendants. | |

### COMPLAINT

Plaintiff, CIT Communications Finance Corporation ("CIT"), by and through its undersigned counsel, initiates this civil action against Defendants, Level 3 Communications, LLC (" LLC") and Level 3 Communications, Inc. ("INC," and together with LLC, "Level 3" or "Defendants") and alleges as follows:

### The Parties

1.      CIT is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at One CIT Drive, Mail Stop 4104, Livingston, New Jersey 07039.

2.      LLC is a limited liability company organized and existing under the laws of the State of Delaware.

3.      INC is a corporation organized and existing under the laws of the State of Delaware.

### Jurisdiction

4.      This Court has jurisdiction over this matter pursuant to 10 Del. C. § 541.

5.      Defendants are subject to the personal jurisdiction of this Court pursuant to 10 Del. C.

§ 3104 because they are organized under the laws of Delaware and have consented to the

jurisdiction of Delaware courts.

### Facts Common to All Counts

6.      On or about December 28, 1995, Genuity Solutions, Inc. f/k/a BBN Corp. and related

entities (together, "Genuity") entered into Master Equipment Lease Agreement E212580 (the

"Master Lease") and various schedules relating thereto (the "Schedules", and together with the

Master Lease as amended from time to time, the "Telephone System Lease") with CIT.  A true

and correct copy of the Telephone System Lease is attached hereto as Exhibit "A".

7.      Pursuant to the Telephone System Lease, CIT leased Genuity the telephone system and

related equipment identified in the Master Lease (the "Equipment"), in return for Genuity's

agreement, among other things, to make monthly installment lease payments to CIT in the

amount of $215,716.56 (the "Monthly Payments").

8.      On November 27, 2002, Genuity filed for bankruptcy protection in the United States

Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

9.      In the bankruptcy, Genuity sought the approval of the Bankruptcy Court to sell its assets

to Level 3.

10.     On or about January 24, 2003, the Bankruptcy Court approved the sale of Genuity's

assets to Level 3.

11.     As part of the sale, Level 3 acquired some or all of the Equipment as well as Genuity's

obligations under the Telephone System Lease.

12.     As part of the sale, Genuity transferred possession of the Equipment to Level 3.

13.     In accordance with the terms of the sale and as required by the Telephone System Lease, Level 3 was required to make the Monthly Payment to CIT for the Equipment.

14.     Despite Level 3 making some payments to CIT on account of the Telephone System Lease, Level 3 subsequently disclaimed any obligations to make the Monthly Payment and consequently has failed to make the required Monthly Payments to CIT.

15.     Notwithstanding CIT's demand, Level 3 has failed to return all the Equipment to CIT.

16.     At all relevant times, each Defendant was an agent of the other and performed the acts herein alleged within the course and scope of such agency.

17.     At all relevant times, each Defendant conspired and agreed with the other to do the things herein alleged.

18.     As the parent company of LLC, INC controls LLC and has caused LLC to do the things herein alleged.

## Count I
## Breach of Contract

19.     CIT incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were fully set forth herein.

20.     While CIT has performed its obligations, Level 3 has breached its contractual obligations by failing to make all monthly payments due and owing CIT.

21.     As a result of Level 3's failure to make the required monthly payments, CIT has been injured.

22.     WHEREFORE, CIT seeks relief against each Defendant as hereinafter set forth.

## Count II
## Unjust Enrichment

23.    CIT incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were fully set forth herein.

24.    Level 3 has benefited and will continue to benefit from the Equipment.

25.    Level 3 has failed to make payment to CIT for the Equipment.

26.    Level 3 has been unjustly enriched and should be required to compensate CIT for the Equipment.

WHEREFORE, CIT seeks relief against each Defendant as hereinafter set forth.


## Count III
## Conversion

27.    CIT incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were fully set forth herein.

28.    Despite Level 3's knowledge of CIT's ownership and right to possession of the Equipment and notwithstanding CIT's demand for return of the Equipment, Level 3 has failed to return the Equipment to CIT.

29.    Level 3 has converted CIT's Equipment by failing to return the Equipment to CIT.

WHEREFORE, CIT seeks the following relief against each Defendant:

(a)    Compensatory and other damages in an amount to be determined at trial;

(b)    Pre-judgment and post-judgment interest; and

(c)    Such further relief that the Court may deem just and proper.

## JURY DEMAND

CIT hereby demands a trial by jury on all issues so triable.

- 4 -

Dated: January 23, 2006

Andrew C. Kassner (No. 4507)
Howard A. Cohen (No. 4082)
DRINKER BIDDLE & REATH
1100 N. Market Street
Suite 1000
Wilmington, DE  19801
(302) 467-4200

Attorneys for Plaintiff,
CIT Communications Finance Corporation

## CERTIFICATE OF VALUE

I, Howard A. Cohen, attorney for plaintiff, hereby certify in good faith at this time in my opinion that the sum of damages is in excess of $100,000.00, exclusive of costs and interest.

Dated: January 23, 2006

Howard A. Cohen (No. 4082)
DRINKER BIDDLE & REATH
1100 N. Market Street
Suite 1000
Wilmington, DE 19801
(302) 467-4200

Attorneys for Plaintiff,
CIT Communications Finance Corporation

EFiled: Jan 23 2006 11:05 AM EST
Transaction ID 10389304

# EXHIBIT "A"



MELA IV
CC05A
(04/93)

AT&T Capital Corporation

# Master Equipment Lease Agreement

| LESSEE: BBN CORP. | LESSOR: AT&T CREDIT CORPORATION |
|---|---|
| Street Address: 150 CAMBRIDGEPARK DRIVE | Address: 2 GATEHALL DRIVE PARSIPPANY, NJ 07054 |
| City/State/Zip: CAMBRIDGE, MA 02140 | Lease Number: E212580 |

**1. AGREEMENT.** Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the equipment (Equipment) described in any schedule (Schedule) that incorporates this Master Equipment Lease Agreement (Agreement) by reference. A Schedule shall incorporate this Agreement by reference by listing the above-referenced Lease Number thereon. Such lease shall be governed by the terms and conditions of this Agreement, as well as by the terms and conditions set forth in the applicable Schedule. Each Schedule shall constitute an agreement separate and distinct from this Agreement and any other Schedule. In the event of a conflict between the provisions of this Agreement and a Schedule, the provisions of the Schedule shall govern.

**2. ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee shall execute and deliver to Lessor a writing acceptable to Lessor whereby Lessor is assigned all of Lessee's rights and interest in and to: (a) the Equipment described in the applicable Schedule and (b) any purchase order, contract or other documents (collectively, Purchase Documents) relating thereto that Lessee has entered into with the Seller (as specified in the applicable Schedule). If Seller is not an affiliate of Lessor, Lessee shall deliver to Lessor a writing acceptable to Lessor whereby Seller acknowledges, and provides any required consent to, such assignment. If Lessee has not entered into any Purchase Document for the Equipment with Seller, Lessee authorizes Lessor to act as Lessee's agent to issue a purchase order to Seller for the Equipment and for associated matters, and such purchase order shall be subject to this Section 2 and all references in this Agreement to Purchase Documents shall include such purchase order. By executing the applicable Schedule, Lessee represents and warrants that Lessee either (y) has reviewed, approved and received a copy of the applicable Purchase Documents or (z) has been informed by Lessor (i) of the identity of the Seller, (ii) that Lessee may have rights under the Purchase Documents and (iii) that Lessee may contact Seller for a description of such rights.

**3. DELIVERY; ACCEPTANCE.** Lessee shall cause the Equipment to be delivered to Lessee at the Equipment Location (as specified in the applicable Schedule) and Lessee shall accept the Equipment as soon as it is delivered or, if acceptance criteria is specified in the applicable Purchase Documents, as soon as it has met such criteria. Lessee shall evidence its acceptance of the Equipment and commencement of the Lease with respect thereto by executing and delivering to Lessor a commencement certificate (Commencement Certificate) in a form acceptable to Lessor. By executing and delivering a Commencement Certificate to Lessor, (a) Lessee represents and warrants that it has selected the Equipment and Seller specified on the applicable Schedule and (b) Lessee shall irrevocably accept such Equipment under lease.

**4. PURCHASE OF EQUIPMENT.** Provided that no Event of Default (as defined in Section 19) exists, and no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, Lessor shall be obligated to purchase the Equipment from Seller and to lease the Equipment to Lessee if (and only if) Lessor receives on or before the Latest Commencement Date (as specified in the applicable Schedule) the related Commencement Certificate and Schedule (both executed by Lessee), and such other documents or assurances as Lessor may reasonably request.

**5. TERM.** The initial term of each Schedule (Initial Term) shall begin on the date specified as the Commencement Date on the Commencement Certificate with respect to such Schedule and shall continue for the period specified in such Schedule. Any renewal term of a Schedule (Renewal Term) shall begin on the expiration of, as applicable, the Initial Term or any preceding Renewal Term (collectively, Term).

**6. RENT; ADVANCE RENT; LATE CHARGES.** Lessee shall pay Lessor the first Rental Payment (as specified in the applicable Schedule) for the Equipment on or before the Commencement Date of the applicable Schedule, and shall pay Lessor the remaining periodic Rental Payments on or before the periodic payment dates specified in the applicable Schedule or, if periodic payment dates are not specified, on or before the corresponding day of each subsequent period during the Initial Term of the applicable Schedule, regardless of whether Lessee has received notice that such Rental Payments are due. Additionally, if pursuant to this Agreement or the applicable Schedule the Term is extended or a renewal option exercised, Lessee shall also pay all Rental Payments required with respect thereto. All Rental Payments will be sent to Lessor's above-referenced address, or to such other address as specified by Lessor in writing. Lessee shall also pay Lessor Advance Rent (as specified in the applicable Schedule) for the Equipment when it signs the applicable Schedule, and such Advance Rent shall be refunded without interest to Lessee only if Lessor declines to sign the applicable Schedule. Advance Rent shall be credited to Lessee's first Rental Payment under the applicable Schedule, and any excess Advance Rent shall be credited to Lessee's final Rental Payment(s). Lessee agrees to pay Lessor a late charge of 5% of any Rental Payment (or other amount due hereunder) that is not paid within 10 days of its due date, plus interest at the rate of 1 1/2% per month on any such amounts (or such lesser rate as is the maximum rate allowable under applicable law). Also, in the event that more than one Schedule is entered into hereunder, the parties will use their best efforts to implement a common billing date for all Schedules.

**7. ADJUSTMENTS.** The Total Purchase Price (as specified in the applicable Schedule) and Rental Payment set forth in each Schedule are estimates, and if the final invoice from Seller specifies a Total Purchase Price (including taxes, delivery, installation and other charges) that is greater or less than such estimated Total Purchase Price, Lessee hereby authorizes Lessor to adjust the Total Purchase Price and Rental Payment on the applicable Schedule to reflect the final invoice amount (Final Invoice Amount). If Option B in the Schedule has been selected, Lessee also authorizes Lessor to adjust such purchase and renewal options to reflect the Final Invoice Amount. However, if the Final Invoice Amount exceeds the estimated Total Purchase Price by more than 10%, Lessor will notify Lessee and obtain Lessee's prior written approval of the aforementioned adjustments; provided, however that such written approval shall not be required when such adjustments are caused by Equipment changes or system reconfigurations requested or caused by Lessee. Additionally, if Lessor financed any down payment for the Equipment pursuant to an interim financing agreement (Financing Agreement) with Lessee, Lessor may also adjust the Total Purchase Price and Rental Payment with respect to such Equipment to reflect any accrued interest that Lessee elects to finance. All references in this Agreement and in any Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified in the applicable Schedule, as adjusted pursuant to this Section 7.

**8. INSURANCE.** At its own expense, Lessee shall provide and maintain the following insurance: (a) insurance against the loss or theft of or damage to the Equipment for the greater of the Stipulated Loss Value (computed as described in the applicable Schedule) or full replacement value thereof, naming Lessor as a loss payee; and (b) public liability and third party property damage insurance, naming Lessor as an additional insured. Such insurance shall be in a form, amount and with companies reasonably satisfactory to Lessor, shall contain the insurer's agreement to give Lessor 30 days' prior written notice before cancellation or material change thereof, and shall be payable to Lessor regardless of any act, omission or breach by Lessee. Lessee shall deliver to Lessor the insurance policies or copies thereof or certificates of such insurance on or before the Commencement Date of the applicable Schedule, and at such other times as Lessor may reasonably request. If no Event of Default exists, and no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, the proceeds of any insurance required under clause (a) hereof that have been paid to Lessor shall be applied against Lessee's obligations to Lessor under Section 13 hereof.

**9. TAXES.** Lessee shall reimburse Lessor for (or pay directly, but only if instructed by Lessor) all taxes, fees, and assessments that may be imposed by any taxing authority on the Equipment or on its purchase, ownership, delivery, possession, operation, rental, return to Lessor or purchase by Lessee (collectively, Taxes); provided, however, that Lessee shall not be liable for any such Taxes (whether imposed by the United States of America or by any other domestic or foreign taxing authority) imposed on or measured by Lessor's net income or tax preference items. Lessee's obligation includes, but is not limited to, the obligation to pay all license and registration fees and all sales, use, personal property and other taxes and governmental charges, together with any penalties, fines and interest thereon, that may be imposed during the Term of the applicable Schedule. Lessee is liable for these Taxes whether they are imposed upon Lessor, Lessee, the Equipment, this Agreement, the applicable Schedule or any Financing Agreement. If Lessee is required by law or administrative practice to make any report or return with respect to such Taxes, Lessee shall promptly advise Lessor thereof in writing and shall cooperate with Lessor to ensure that such reports are properly filed and accurately reflect Lessor's interest in the Equipment. Lessor has no obligation to contest any such Taxes, however Lessee may do so provided that: (a) Lessee does so in its own name and at its own expense; (b) the contest does not and will not result in any lien attaching to any Equipment or otherwise jeopardize Lessor's right to any Equipment; and (c) Lessee indemnifies Lessor for all expenses (including legal fees and costs), liabilities and losses that Lessor incurs as a result of any such contest.

**10. REPAIRS; USE; LOCATION; LABELS.** Lessee shall: (a) at its own expense, keep the Equipment in good repair, condition and working order and maintained in accordance with the manufacturer's recommended engineering and maintenance standards; (b) use the Equipment lawfully and exclusively in connection with its business operations and for the purpose for which the Equipment was designed and intended; and (c) without Lessor's prior written consent, not move the Equipment from the Equipment Location. If Lessor supplies Lessee with labels stating that the Equipment is owned by Lessor, Lessee shall affix such labels to the Equipment pursuant to Lessor's instructions.

**11. MAINTENANCE; INSPECTION; ALTERATIONS.** At its own expense, Lessee shall: (a) enter into and maintain a maintenance agreement for the Equipment with the manufacturer or other party acceptable to Lessor; (b) maintain the Equipment in the same condition as when delivered, subject only to ordinary wear and tear, and in good operating order and appearance; (c) make all alterations or additions to the Equipment that may be required or supplied by the Seller or legally necessary; and (d) make no other alterations or additions to the Equipment (except for alterations or additions that will not impair the value or performance of the Equipment and that are readily removable without damage to the Equipment). Any modifications, alterations or additions that Lessee makes to the Equipment (except as permitted by Section 11(d) above) shall become Lessor's property and shall also be deemed to be Equipment. Upon request, Lessor, or any party designated by Lessor, shall have the right to inspect the Equipment and Lessee's applicable maintenance agreement and records at any reasonable time.

**12. PERSONAL PROPERTY; LIENS AND ENCUMBRANCES; TITLE.** The Equipment shall at all times remain personal property, notwithstanding that the Equipment, or any part thereof, may be (or becomes) affixed or attached to real property or any improvements thereon. Except for the interest of Lessor, Lessee shall keep the Equipment free and clear of all levies, liens and encumbrances of any nature whatsoever. Except as expressly set forth in this Agreement, the Equipment shall at all times remain the property of Lessor and Lessee shall have no right, title or interest therein.

**13. RISK OF LOSS.** As between Lessor and Lessee, Lessee shall bear the entire risk of loss, theft, destruction or damage to the Equipment from any cause whatsoever or requisition of the Equipment by any governmental entity or the taking of title to the Equipment by eminent domain or otherwise (collectively, Loss). Lessee shall advise Lessor in writing within 10 days of any such Loss. Except as provided below, no such Loss shall relieve Lessee of the obligation to pay Lessor Rental Payments and all other amounts owed hereunder. In the event of any such Loss, Lessor, at its option, may: (a) if the Loss has not materially impaired the Equipment (in Lessor's reasonable judgment), require Lessee, upon Lessors' demand, to place the Equipment in good condition and repair reasonably satisfactory to Lessor; or (b) if the Loss has materially impaired the Equipment (in Lessor's reasonable judgment), require Lessee, upon Lessor's demand, to pay Lessor its anticipated return (Lessor's Return), which shall consist of the following amounts: (i) the Rental Payments (and other amounts) then due and owing under the applicable Schedule; plus (ii) the Stipulated Loss Value (computed as described in the applicable Schedule) of the Equipment; plus (iii) all other amounts that become due and owing under the applicable Schedule, but only to the extent such amounts are not included in the moneys paid to Lessor pursuant to clauses (i) and (ii) above. Upon Lessor's full receipt of such Lessor's Return: (y) the applicable Schedule shall terminate, and except as provided in Section 25, Lessee shall be relieved of all obligations under the applicable Schedule; and (z) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**14. NON-CANCELLABLE NET LEASE.** ALL LEASES HEREUNDER SHALL BE NON-CANCELLABLE NET LEASES, AND LESSEE AGREES THAT IT HAS AN UNCONDITIONAL OBLIGATION TO PAY ALL RENTAL PAYMENTS AND OTHER AMOUNTS WHEN DUE. LESSEE IS NOT ENTITLED TO ABATE OR REDUCE RENTAL PAYMENTS OR ANY OTHER AMOUNTS DUE, OR TO SET OFF ANY CHARGES AGAINST THOSE AMOUNTS. LESSEE IS NOT ENTITLED TO RECOUPMENTS, CROSS-CLAIMS, COUNTERCLAIMS OR ANY OTHER DEFENSES TO ANY RENTAL PAYMENTS OR OTHER AMOUNTS DUE HEREUNDER, WHETHER THOSE DEFENSES ARISE OUT OF CLAIMS BY LESSEE AGAINST LESSOR, SELLER, THIS AGREEMENT, ANY SCHEDULE OR OTHERWISE. NEITHER DEFECTS IN EQUIPMENT, DAMAGE TO IT, NOR ITS LOSS, DESTRUCTION OR LATE DELIVERY SHALL TERMINATE THIS AGREEMENT OR ANY SCHEDULE, OR AFFECT LESSEE'S OBLIGATIONS HEREUNDER. UNLESS LESSEE'S OBLIGATION TO PAY RENTAL PAYMENTS AND OTHER AMOUNTS HAS BEEN TERMINATED PURSUANT TO THE EXPRESS TERMS OF THIS AGREEMENT, ALL RENTAL PAYMENTS AND OTHER AMOUNTS SHALL CONTINUE TO BE DUE AND PAYABLE HEREUNDER.

**15. LESSOR DISCLAIMERS; LIMITATION OF REMEDIES.** IT IS SPECIFICALLY UNDERSTOOD AND AGREED THAT: (A) LESSOR SHALL NOT BE DEEMED TO HAVE MADE ANY REPRESENTATION, WARRANTY OR PROMISE MADE BY SELLER, NEITHER SELLER NOR LESSOR SHALL ACT AS, OR BE DEEMED TO BE, AN AGENT OF THE OTHER, AND LESSOR SHALL NOT BE BOUND BY, OR LIABLE FOR, ANY REPRESENTATION OR PROMISE MADE BY SELLER (EVEN IF LESSOR IS AFFILIATED WITH SELLER); (B) LESSOR SHALL NOT BE LIABLE FOR ANY FAILURE OF ANY EQUIPMENT OR ANY DELAY IN ITS DELIVERY OR INSTALLATION; (C) LESSOR SHALL NOT BE LIABLE FOR ANY BREACH OF ANY WARRANTY THAT SELLER MAY HAVE MADE; (D) LESSEE HAS SELECTED ALL EQUIPMENT WITHOUT LESSOR'S ASSISTANCE; (E) LESSOR IS NOT A MANUFACTURER OF ANY EQUIPMENT; AND (F) LESSOR HAS NOT MADE AND DOES NOT NOW MAKE ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO THE DESIGN, COMPLIANCE WITH SPECIFICATIONS, OPERATION, OR CONDITION OF ANY EQUIPMENT (OR ANY PART THEREOF), THE MERCHANTABILITY OR FITNESS OF EQUIPMENT FOR A PARTICULAR PURPOSE, OR ISSUES REGARDING PATENT INFRINGEMENT, TITLE AND THE LIKE. IT IS FURTHER AGREED THAT LESSOR SHALL HAVE NO LIABILITY TO LESSEE, LESSEE'S CUSTOMERS, OR ANY THIRD PARTIES FOR ANY DIRECT, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT OR ANY SCHEDULE OR CONCERNING ANY EQUIPMENT, OR FOR ANY DAMAGES BASED ON STRICT OR ABSOLUTE TORT LIABILITY OR LESSOR'S NEGLIGENCE; PROVIDED, HOWEVER, THAT NOTHING IN THIS AGREEMENT SHALL DEPRIVE LESSEE OF ANY RIGHTS IT MAY HAVE AGAINST ANY PERSON OTHER THAN LESSOR. LESSEE SHALL LOOK SOLELY TO SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT. Lessor hereby assigns to Lessee for the Term of the applicable Schedule the right to enforce, provided no Event of Default then exists under this Agreement and such enforcement is pursued in Lessee's name, any representations, warranties

| | |
|---|---|
| BBN CORP. | AT&T CREDIT CORPORATION |
| Lessee | |
| By: X _Ralph A. Goldwasser_ | By: X _C. A. Gurnow_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| Ralph A. Goldwasser, SVP/CFO | C. A. Gurnow |
| Print Name & Title | Print Name & Title |
| 12/28/95 | 12/29/95 |
| Date | Date |

91979

 **AT&T**
Capital Corporation

# Master Equipment Lease Agreement Schedule

MELA/V
CGOSB
(09-94)

| **LESSEE:** BBN CORP. | **LESSOR: AT&T Credit Corporation** | |
|---|---|---|
| Address  150 CAMBRIDGEPARK DRIVE | **2 Gatehall Drive, Parsippany, NJ 07054** | |
| City / State / Zip  CAMBRIDGE, MA 02140 | Lease Number  E212580 | Schedule Number  00170 |
| **SELLER:** LUCENT TECHNOLOGIES INC | | Total Price Including Installation/One-Time Charges |

Description of Items to be Leased (the Equipment)

If the yield of the 3.00 year Treasury Note trading closest to par as stated in
The Wall Street Journal on the Commencement Date is different by an amount greater than 25
basis points from the yield of 5.97%, the rate will be adjusted upward or downward in an
amount equal to the difference between the two yields and the amount of the periodic
payments will be adjusted accordingly. However, if the change in the amount of the
periodic payment that would result from such rate adjustment would be no greater than
$ 5.00 per payment period, no adjustment shall be made.
Equipment subject hereto shall include the Lucent/AT&T Definity Communications System G3sI V5
and all other items of equipment, and all attachments, alterations, and additions thereto, and
all parts thereto, and a right to use license for any software related thereto and related
documentation, set forth in the attached copy(s) of the equipment order(s) between the Lessee
and the Seller or Supplier, consisting of 6 page(s), and all amendments or supplements
to such equipment order(s) as reflected in the invoice(s) of the Seller or Supplier.

| | Yes | No | | |
|---|---|---|---|---|
| Option A.................................... | ☒ | ☐ | Total This Page | $ 0.00 |
| Lessee selects a fair market value purchase option and a fair rental value renewal option. | | | Attached ( ) Additional Pages | $ 400,432.97 |
| | Yes | No | | |
| Option B.................................... | ☐ | ☒ | Total Purchase Price (Sum of total prices including installation/one-time charges) | $ 400,432.97 |
| Lessee selects (i) a fixed price purchase option of either $ _____ or _____% of the Total Purchase Price, and (ii) a fixed price renewal option of _____% of the periodic Rental Payment. | | | | |
| | | | Advance Rent  $ 6,755.30 | Rental Payment  $ 6,755.30 |
| THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Rental Payment Period  Monthly | Latest Commencement Date  05/30/97 |
| Equipment Location | | | Length of Initial Term | |
| 9780 PATUXENT WOODS DRIVE  COLUMBIA, MD 21046 | | | 60 months | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR ON AT&T CAPITAL CORPORATION ON ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 22 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IF EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY OBTAIN A COPY AND/OR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT. THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORP. | AT&T CREDIT CORPORATION |
|---|---|
| Lessee | |
| By: X _Bruce Haskin_ | By: X _Lisa G. Stora_ |
| Lessee Authorized Signature  Bruce Haskin, Treasurer | Lessor Authorized Signature  Lisa G. Stora, Credit Officer |
| Print Name and Title | Print Name and Title |
| Date  May #1, 1997 | Date  May 19, 1997 |

ORIGINAL

The terms and conditions set forth below shall apply to Option and B on the front of this Schedule; provided, however, that Lessee may select only one of the two aforementioned options. If Lessee selects Option A, the TAX INDEMNITY provision set forth below (Section 4) shall apply to this Schedule, if no selection is indicated on the front of this Schedule, Lessee shall be deemed to have selected Option A.

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as adjusted pursuant to Section 7 of the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule.

**1. OPTION A—FAIR MARKET VALUE PURCHASE AND RENEWAL OPTIONS.** (a) If Option A has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below); provided, however, that the foregoing renewal option may not be exercised if Lessee reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 16 of the Agreement.

91979

**AT&T**
Capital Corporation

MELAIV
CCO6B
(04-94)

# Master Equipment Lease Agreement Schedule

| **LESSEE:** BBN CORP. | **LESSOR: AT&T Credit Corporation** | |
|---|---|---|
| Address 150 CAMBRIDGEPARK DRIVE | **2 Gatehall Drive, Parsippany, NJ 07054** | |
| City / State / Zip CAMBRIDGE, MA 02140 | Lease Number E212580 | Schedule Number 00200 |
| **SELLER:** LUCENT TECHNOLOGIES INC. | | Total Price Including Installation/One-Time Charges |

Description of Items to be Leased (the Equipment)

If the yield of the 3.00 year Treasury Note trading closest to par as stated in
The Wall Street Journal on the Commencement Date is different by an amount greater than 25
basis points from the yield of 6.57%, the rate will be adjusted upward or downward in an
amount equal to the difference between the two yields and the amount of the periodic
payments will be adjusted accordingly. However, if the change in the amount of the
periodic payment that would result from such rate adjustment would be no greater than
$ 5.00 per payment period, no adjustment shall be made.
Equipment subject hereto shall include the LUCENT/AT&T MERLIN LEGEND
and all other items of equipment, and all attachments, alterations, and additions thereto, and
all parts thereto, and a right to use license for any software related thereto and related
documentation, set forth in the attached copy(s) of the equipment orders(s) between the Lessee
and the Seller or Supplier, consisting of 2 page(s), and all amendments or supplements
to such equipment order(s) as reflected in the invoice(s) of the Seller or Supplier.

| | Yes | No | Total This Page | $ 0.00 |
|---|---|---|---|---|
| Option A. | ☒ | ☐ | | |
| Lessee selects a fair market value purchase option and a fair rental value renewal option. | Yes | No | Sub Total(s) from Attached ( ) 2 Additional Pages | $ 31,515.38 |
| Option B. | ☐ | ☒ | Total Purchase Price (Sum of total prices including installation/one-time charges) | $ 31,515.38 |
| Lessee selects (i) a fixed price purchase option of either $_____ or _____% of the Total Purchase Price, and (ii) a fixed price renewal option of _____% of the periodic Rental Payment. | | | Advance Rent $ 744.10 | Rental Payment 1-36 @ $744.10 $ 37-60 @ $345.68 |
| THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Rental Payment Period Monthly | Latest Commencement Date 06/30/97 |
| Equipment Location 2400 BROADWAY SANTA MONICA, CA 90404 | | | Length of Initial Term 60 months | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR AT&T CAPITAL CORPORATION OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH IN THE FRONT AND BACK OF THIS SCHEDULE, PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT. THIS SCHEDULE OR ANY SUPPLEMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORP. | AT&T CREDIT CORPORATION |
|---|---|
| Lessee | |
| By: X _Bruce Haskin_ | By: X _John Kisciotti_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| Print Name and Title Bruce Haskin , Treasurer | Print Name and Title John Kisciotti Act Mgr |
| Date June 1, 1997 | Date 6/6/97 |

ORIGINAL

The terms and conditions set forth below shall apply to Option _____ and B on the front of this Schedule; provided, however, that Lessee may select only one of the two above-mentioned options. If Lessee selects Option A, the Tax Indemnity provision set forth below (Section 4) shall apply to this Schedule. If no selection is indicated on the front of this Schedule, Lessee shall be deemed to have selected Option A.

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings described to them in the Master Equipment Lease Agreement (Agreement) identified by the Lease Number specified on the front of the Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule.

**1. OPTION A—FAIR MARKET VALUE PURCHASE AND RENEWAL OPTIONS.** (a) If Option A has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 2 below), Lessee shall have the following options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below); provided, however, that the foregoing renewal option may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell, in determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**2. OPTION B—FIXED PRICE PURCHASE AND RENEWAL OPTIONS.** (a) If Option B has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 2 below), Lessee shall have the following fixed price purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at the Sale Price; or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months at the amount specified in Option B on the front of this Schedule (Sale Price); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months at the amount specified; at Fair Rental Value (Renewal Rental Payment); provided, however, that the foregoing renewal option may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Sale Price at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Renewal Rental Payment on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Sale Price as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 2, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**3. LESSOR'S RETURN.** (a) Stipulated Loss Value. If Section 13 of the Agreement provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 6% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) if Option A of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment plus (iii) if Option B of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the purchase option amount set forth on the front of this Schedule. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price.

(b) Casualty Percent. ____ or purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specifie ____ ne front of this Schedule) 65% for a Term of less than 36 months; 60% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater.

**4. TAX INDEMNITY.** (a) If Option A has been selected, Lessor intends to take accelerated cost recovery deductions (Recovery Deductions) under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended (Code), and accelerated depreciation deductions and applicable state law (Depreciation Deductions). Accordingly, Lessee makes the following representations, warranties and covenants: (i) at the time Lessee accepts the Equipment pursuant to Section 3 of the Agreement, the Equipment will have been "placed in service" within the meaning of sections 167 and 168 of the Code; (ii) the Total Purchase Price shall qualify for Recovery Deductions and Depreciation Deductions (with the exception of any items that are not excluded by specific language on the front of this Schedule and any increase in the Total Purchase Price that is attributable to any accrued interest under a Financing Agreement); (iii) neither Lessee, any of its affiliates, nor any of its successors, sublessees or assignees was, is, or will become a tax-exempt entity described in section 168 (h) (2) of the Code at any time during the Term of this Schedule or for the five years preceding the Commencement Date; and (iv) at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assignees) take any action (whether or not such act or omission is otherwise required by the Agreement) that results in a loss, reduction, deferral, recapture or other unavailability to Lessor of any part of the Recovery Deductions or Depreciation Deductions are lost, reduced, deferred, recaptured or otherwise made unavailable to Lessor (Tax Loss), Lessee shall, upon demand by Lessor, promptly pay damages to Lessor. The amount of such damages shall be the amount necessary to provide Lessor with a Net Economic Return (as defined in Section 4(d) below) equal to the Net Economic Return that Lessor would have realized if a Tax Loss or Tax Law Change (as applicable) had not occurred, assuming Lessee would fulfill all of its obligations hereunder, and shall be based upon the same assumptions and pricing analysis used by Lessor in determining the amount of the periodic Rental Payment then in effect, except to the extent such assumptions are affected by the Tax Loss or Tax Law Change (as applicable) at issue. Without limiting the generality of the foregoing, it shall be irrebuttably presumed that all income of Lessor for any year is subject to tax at the highest then applicable federal income tax rate generally applicable to corporations and that Lessor has sufficient taxable income to offset all deductions arising hereunder.

(b) The amount of each periodic Rental Payment remaining to be paid during the Applicable Term (as previously adjusted pursuant to this Section 4(b)) shall be adjusted, upwards or downwards, if changes are made to the Code (including changes in the corporate income tax rates) or any regulations promulgated thereunder that affect the federal income tax consequences to Lessor that were contemplated by Lessor when it determined the amount of the periodic Rental Payment then in effect (Tax Law Change). The net effect of any adjustment under this Section 4(b) shall be to provide Lessor with a Net Economic Return equal to the Net Economic Return that Lessor would have realized if no Tax Law Change had occurred.

(c) Any damages required by Section 4(a) above and any adjustment required by Section 4(b) above shall be in the amount necessary to provide Lessor a net after-tax yield, net after-tax cash flow and net after-tax book earnings (Net Economic Return) equal to the Net Economic Return Lessor would have realized with respect to the transaction contemplated by this Schedule if a Tax Loss or Tax Law Change (as applicable) had not occurred, assuming Lessee would fulfill all of its obligations hereunder, and shall be based upon the same assumptions and pricing analysis used by Lessor in determining the amount of the periodic Rental Payment then in effect, except to the extent such assumptions are affected by the Tax Loss or Tax Law Change (as applicable) at issue. Without limiting the generality of the foregoing, it shall be irrebuttably presumed that all income of Lessor for any year is subject to tax at the highest then applicable federal income tax rate generally applicable to corporations and that Lessor has sufficient taxable income to offset all deductions arising hereunder.

(d) With respect to any damages or adjustments calculated by Lessor as set forth above (Calculation Amount), at the request and expense of Lessee, Lessor shall submit the assumptions and calculations underlying any such Calculation Amount to Lessor's independent certified public accountants for verification of the maintenance of Lessor's Net Economic Return. Such accountants' determination that the Calculation Amount does or does not maintain Lessor's Net Economic Return (and, in the case of the latter, such accountants' determination of the adjusted amount that would so maintain such Net Economic Return) shall be binding upon Lessor and Lessee. Lessee agrees that any information provided to such accountants by Lessor constitutes private, proprietary and confidential property of Lessor and that no person other than Lessor and such accountants shall be entitled access thereto.

**5. SECURITY INTEREST.** If Option A has been selected, Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security or if Option B has been selected, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, proceeds, replacements, rentals and proceeds (including insurance proceeds) thereunder as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent.

**6. LEASING ADDITIONAL EQUIPMENT.** Lessee may request Lessor to finance the costs of any additional equipment by sending Lessor a purchase order or by contacting Lessor or the Seller by telephone or in writing. If the total cost of such additional equipment (Additional Equipment) is Twenty-Five Thousand Dollars or less and if Lessor agrees to lease such Additional Equipment to Lessee, Lessor will signify its agreement by preparing and sending to Lessee a writing (describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the length of Initial Term, the applicable purchase and renewal options and each other term and condition that apply to such lease. LESSEE AGREES THAT IF LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE SHALL BE DEEMED TO HAVE (A) IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT, (B) AUTHORIZED LESSOR TO PAY THE SELLER FOR THE ADDITIONAL EQUIPMENT AND (C) AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS SCHEDULE. If Lessee objects in the manner and within the timeframe set forth above, the Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Purchase Documents.

**7. ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessee as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. If Seller is not an affiliate of Lessor, Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, no additional fee or charge Seller will allow (or grant Lessor any applicable license relating to the use of any software, technical information, confidential business information or other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment upon assignment of the Equipment. Subject to Seller's (Equipment licensing provisions Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

age 26 of 99)

51979

~~Schedule~~ 50 E4100 Phones



AT&T
Capital Corporation

MELAY
CCO68
(08-04)

# Master Equipment Lease Agreement Schedule

| LESSEE: BBN CORP. | LESSOR: AT&T Credit Corporation | |
|---|---|---|
| Address 150 CAMBRIDGEPARK DRIVE | 2 Gatehall Drive, Parsippany, NJ 07054 | |
| City / State / Zip CAMBRIDGE, MA 02140 | Lease Number E212580 | Schedule Number 00260 |
| SELLER: LUCENT TECHNOLOGIES INC | Total Price Including Installation/One-Time Charges | |

Description of Items to be Leased (the Equipment)

This Schedule describes a coterminous addition (Addition) to the equipment described
in Schedule Number 00170 (Primary Schedule). Accordingly, (a) if Lessee purchases
or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable,
purchase the Addition or renew this schedule for a Renewal Term of the same length as
the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor
the Lessor's Return with respect to the Primary schedule, Lessee shall pay Lessor
the Lessor's Return with respect to this schedule.
Equipment subject hereto shall include the LUCENT DEFINITY COMMUNICATIONS SYSTEM CS111S1 ADD-ON EQUIPMENT
and all other items of equipment, and all attachments, alterations, and additions thereto, and
all parts thereto, and a right to use license for any software related thereto and related
documentation, set forth in the attached copy(s) of the equipment order(s) between the Lessee
and the Seller or Supplier, consisting of 2 page(s); and all amendments or supplements
to such equipment order(s) as reflected in the invoice(s) of the Seller or Supplier.

| | Yes | No | | |
|---|---|---|---|---|
| Option A...... | ☑ | ☐ | Total This Page | $ 0.00 |
| Lessee selects a fair market value purchase option and a fair rental value renewal option. | | | Attached ( ) Sub Total(s) from ( ) Additional Pages | $ 29,525.00 |
| | Yes | No | | |
| Option B...... | ☐ | ☑ | Total Purchase Price (Sum of total prices including installation/one-time charges) | $ 29,525.00 |
| Lessee selects (i) a fixed price purchase option of either $ ____ or ____ % of the Total Purchase Price, and (ii) a fixed price renewal option of ____ % of the periodic Rental Payment. | | | Advance Rent $ 922.66 | Rental Payment PMNTS 1-24 $922.66 PMNTS 25-56 @ $327.04 |
| THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Rental Payment Period Monthly | Latest Commencement Date 09/30/97 |
| Equipment Location 9780 PATUXENT WOODS DR COLUMBIA, MD 21046 | | | Length of Initial Term 56 months | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT)
AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR AT&T CAPITAL CORPORATION OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH
IN THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND CONDITIONS WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS, LESSEE AGREES TO
LEASE FROM LESSOR THE EQUIPMENT AS SPECIFIED BELOW. AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS
OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT
BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY
AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN
INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS, TO THE EXTENT PERMITTED BY APPLICABLE
LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE
THAT MAY WAIVE OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORP. | AT&T CREDIT CORPORATION |
|---|---|
| Lessee X _Bruce H__ | By X _Linda M. Ventine_ |
| Lessee Authorized Signature BRUCE HASKIN, TREASURY | Lessor Authorized Signature Linda M. Ventine Acct Mgr |
| Print Name and Title | Print Name and Title |
| Date 9/17/97 | Date 9-22-97 |

ORIGINAL

The terms and conditions set forth below shall apply to Option ___ and B on the front of this Schedule; provided, however, that Lessee may select only one of the two alternative options. If Lessee selects Option A, the Tax Indemnity provision set forth below (Section 4) shall apply to this Schedule. If no selection is indicated on the front of this Schedule, Lessee shall be deemed to have selected Option A.

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as adjusted pursuant to Section 7 of the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule.

**1. OPTION A—FAIR MARKET VALUE PURCHASE AND RENEWAL OPTIONS.** (a) If Option A has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below); provided, however, that the foregoing renewal option may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 10 of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with Section 10 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 10 of the Agreement or until Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) and an informed and willing seller under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the cost of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**2. OPTION B—FIXED PRICE PURCHASE AND RENEWAL OPTIONS.** (a) If Option B has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following fixed price purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term for the amount specified in Option B on the front of this Schedule (Sale Price); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months at the specified in Option B on the front of this Schedule (Renewal Rental Payment); provided, however, that the foregoing renewal option may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 10 of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Sale Price at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Renewal Rental Payment on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Sale Price as specified above; or (iii) return the Equipment to Lessor in accordance with Section 10 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 10 of the Agreement or until Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 2, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**3. LESSOR'S RETURN.** (a) Stipulated Loss Value. If Section 13 of the Agreement provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 5% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term); plus (ii) if Option A of this Schedule has been selected, the present value (computed as described above and calculated by Lessor) of the Fair Market Value of the Equipment as of the date of the Loss or Event of Default in question of the casualty value (determined as set forth below) of the Equipment; plus (iii) if Option B of this Schedule has been selected, the present value (computed as described above and calculated by Lessor) of the Sale Price as of the date of the Loss or Event of Default in question of the purchase option amount set forth on the front of this Schedule. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price.

(b) Casualty Percent __ » purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specifie__ ne front of this Schedule) 65% for a Term of less than 36 months; 60% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater.

**4. TAX INDEMNITY.** (a) If Option A has been selected, Lessor intends to take accelerated cost recovery deductions (Recovery Deductions) under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended (Code), and accelerated depreciation deductions under applicable state law (Depreciation Deductions). Accordingly, Lessee makes the following representations, warranties and covenants: (i) at the time Lessee accepts the Equipment pursuant to Section 3 of the Agreement, the Equipment will have been "placed in service" within the meaning of sections 167 and 168 of the Code; (ii) the Total Purchase Price shall qualify for Recovery Deductions and Depreciation Deductions (with the exception of any items that are excluded by specific language on the front of this Schedule and any increase in the Total Purchase Price that is attributable to any accrued interest under a Financing Agreement); (iii) neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is, or will become a tax-exempt entity described in section 168 (h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date; and (iv) at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action (whether or not such act or omission is otherwise required by the Agreement) that results in a loss, reduction, deferral, recapture or other unavailability to Lessor of any part of the Recovery Deductions or Depreciation Deductions. If, because of a breach of this Section 4(a), Recovery Deductions or Depreciation Deductions are lost, reduced, deferred, recaptured or otherwise made unavailable to Lessor (Tax Loss), Lessee shall, upon demand by Lessor, promptly pay damages to Lessor. The amount of such damages shall be the amount necessary to provide Lessor with a Net Economic Return (as defined in Section 4(c) below) equal to the Net Economic Return that Lessor would have realized if it had not suffered a Tax Loss. A Loss or damage to the Equipment will constitute a breach of this Section 4(a) if it does not result in the payment of the Lessor's Return described in Section 13 of the Agreement.

(b) The amount of each periodic Rental Payment remaining to be paid during the Applicable Term (as previously adjusted pursuant to this Section 4(b)) shall be adjusted, upwards or downwards, if changes are made to the Code (including changes in the corporate income tax rates) or any regulations promulgated thereunder that affect the federal income tax consequences to Lessor that were contemplated by Lessor when it determined the amount of the periodic Rental Payment then in effect (Tax Law Change). The net effect of any adjustment under this Section 4(b) shall be to provide Lessor a Net Economic Return equal to the Net Economic Return that Lessor would have realized if no Tax Law Change had occurred.

(c) Any damages required by Section 4(a) above and any adjustment required by Section 4(b) above shall be in the amount necessary to provide Lessor a net after-tax cash flow and net after-tax book earnings (Net Economic Return) equal to the Net Economic Return Lessor would have realized with respect to the transaction contemplated by this Schedule if a Tax Loss or Tax Law Change (as applicable) had not occurred, assuming Lessee would fulfil all of its obligations hereunder, and shall be based upon the same assumptions and pricing analysis used by Lessor in determining the amount of the periodic Rental Payment then in effect, except to the extent such assumptions are affected by the Tax Loss or Tax Law Change (as applicable) at issue. Without limiting the generality of the foregoing, it shall be irrebuttably presumed that all income of Lessor (or any part) is subject to tax at the highest then applicable federal income tax rate generally applicable to corporations and that Lessor has sufficient taxable income to offset all deductions arising hereunder.

(d) With respect to any damages or adjustments calculated by Lessor as set forth above (Calculation Amount), at the request and expense of Lessee, Lessor shall submit the assumptions and calculations underlying any such Calculation Amount to Lessor's independent certified public accountants for verification of the maintenance of Lessor's Net Economic Return. Such accountants' determination that the Calculation Amount does or does not maintain Lessor's Net Economic Return and, in the case of the latter, such accountants' determination of the adjusted amount that would so maintain such Net Economic Return shall be binding upon Lessor and Lessee. Lessee agrees that any information provided to such accountants by Lessor constitutes private, proprietary and confidential property of Lessor and that no person other than Lessor and such accountants shall be entitled access thereto.

**5. SECURITY INTEREST.** If Option A has been selected, Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security or if Option B has been selected, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements and any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent.

**6. LEASING ADDITIONAL EQUIPMENT.** Lessee may request Lessor to finance the costs of any additional equipment by sending Lessor a purchase order or by contacting Lessor or the Seller by telephone or in writing. If the total cost of such additional equipment (Additional Equipment) is Twenty-Five Thousand Dollars or less and if Lessor agrees to lease such Additional Equipment to Lessee, Lessor will signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Length of Initial Term, the applicable purchase and renewal options and such other terms and conditions that apply to such lease. **LESSEE AGREES THAT IF LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE SHALL BE DEEMED TO HAVE (a) IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT, (b) AUTHORIZED LESSOR TO PAY THE SELLER FOR THE ADDITIONAL EQUIPMENT AND (c) AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS SCHEDULE.** If Lessee objects in the manner and within the timeframe set forth above, the Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Purchase Documents.

**7. ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessee as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. If Seller is not an affiliate of Lessor, Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, an additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information or other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.



Christine Walker
*Account Manager*
*Lucent Technologies Product Finance*

2 Oakehall Drive
Parsippany, NJ 07054
Telephone 973-606-3825
Facsimile 973-606-3701
E Mail christine_walker@newcourt.com

**Lucent Technologies**

March 31, 1999

BBN Corporation
10 Moulton Street
Cambridge, MA 02138

Attn: Mr. Jim Borden

Subject: Master Equipment Lease Agreement # E212580; Schedule #00320

Dear Mr. Borden,

Thank you for choosing Lucent Technologies Product Finance, a unit of Newcourt Communications Finance Corporation for your financing needs.

We have received the final invoices from Lucent Technologies Inc. for the leased referenced above. The invoices reflect a change to the Total Purchase Price originally indicated on your Schedule.

The Total Purchase Price for Schedule #00320 has changed from $684,121.63 to $609,669.13, which is an decrease of $ 74,452.50. Your monthly payment will be adjusted from $11,760.05 to $10,474.12. This amount does not include taxes.

Copies of the invoices have been included for your information and use.

Please acknowledge your acceptance where indicated below, and return this letter to my attention in the enclosed self-addressed envelope.

If you have any questions, please feel free to contact me at the above telephone number.

Sincerely,                                      **LESSEE ACCEPTANCE**

Christine Walker

                                                X _____
                                                By (Signature)

Enclosure                                       X _____
                                                Print Name & Title   *Michael FLANAGAN   Controller*

                                                X _____
                                                Date   *4/5/99*

*A Member of Newcourt Credit Group*

Christine Walker
*Account Manager*
Lucent Technologies Product Finance

Product Finance

2 Oldwick Drive
Parsippany, NJ 07054
Telephone: 973-606-3821
Facsimile: 973-606-3701
E Mail: cwalker@lucent.com

Lucent Technologies



February 3, 1999

BBN Corp.
10 Moulton Street
Cambridge, MA 02158
Attn: Mr. Jim Borden

Re:  Master Equipment Lease Agreement No. E212580
     Schedule No. 00320

Dear Mr. Borden,

Thank you for selecting AT&T Credit for your continued financing needs.

We have reviewed and approved your request to modify the current term of the above referenced lease agreement and schedule (the "Lease").

Specifically, the initial lease term has been amended from 29 months to 60 months. This change will result in a change to your monthly payment as shown in the table below. This will be the only modification to the Lease; all of the other terms and conditions of the Lease shall remain in full force and effect.

| Schedule No. | Old Total Purchase Price | New Total Purchase Price | Old Mo. Payment | New Mo. Payment | Old Term | New Term |
|---|---|---|---|---|---|---|
| 00320 | $684,121.63 | $684,121.63 | $21,755.07 | $11,760.05 | 29 | 60 |

Please confirm your acceptance of this change by having this letter signed where indicated below, and by returning this letter to Me Christine Walker at the address above. If we do not receive your written acknowledgment within 30 days from the date of this letter, the current term will not be changed.

If you should have any questions regarding this matter, please contact me at 973-606-3825.

Sincerely,                          AGREED TO:

                                    BBN Corp.

Christine Walker                    By (Signature): _____
Account Manager
                                    Print Name & Title: M. WEISSENBURGER    MANAGER
                                    Date: MAY 21, 1999                      BUSINESS
                                                                            ANALYSIS

Cc: D. Formale
    N. Hampis



| AT&T Credit | 2 Gatehall Drive<br>Parsippany, NJ 07054<br>Phone: 1 800 527-9876 |

01/08/98

BBN Corp ("Lessee")
10 Moulton Street
Cambridge, MA , 02138
Attn: Jim Borden

Re:      Additional Lease of Equipment, Lease No. B212580, Schedule No. 00350

     Thank you for choosing AT&T Credit Corporation ("AT&T Credit") for your leasing needs.

     This writing will serve as an "Additional Lease", as that term is defined in the Master Equipment Lease Agreement identified by the Lease Number specified above ("Agreement") between you, as lessee, and AT&T Credit Corporation, as lessor.  Capitalized terms used in this writing that are not defined herein shall have the meanings ascribed to them in the Agreement.

<p style="text-align:center">Additional Lease</p>

     The items of equipment you have asked AT&T Credit to lease to you pursuant to this Additional Lease were selected by you from AT&T Corp. or a subsidiary thereof (the "Seller"), and consist of the following: Definity G-III add on equipment (collectively, "Additional Equipment").

     Your monthly Rental Payment is $ 393.11, plus all applicable taxes.  All Rental Payments are payable on the dates specified in our invoice(s) to you.

     The term of this Additional Lease shall be 51 months.  The applicable end of lease option is the Fair Market Value, which option is more fully described in the Master Equipment Lease Agreement Schedule, Schedule No. 00170, which incorporates by reference the Agreement.

     At all times you will keep and use the Equipment only at 9780 Patuxent Woods Dr  Columbia  MD 21046 ("Equipment Location").

     Pursuant to the Agreement, if we do not receive your written objection to this Additional Lease within 10 days after the date of this Additional Lease, you will be deemed to have irrevocably accepted the Additional Equipment and agreed that, except as otherwise specified above, this Additional Lease shall be governed by all of the terms and conditions of the Agreement.

<p style="text-align:center">Sincerely,</p>

<p style="text-align:center">John Pisciotto<br>Account Manager<br>(201) 606-3955</p>

<p style="text-align:right">d:\dp\aftermk.nsd<br>September 9, 1994</p>

LAV LTPF-CCO58 8-98

# Master Equipment Lease
## Agreement Schedule



Lucent Technologies

| ESSEE: | BBN CORPORATION | LESSOR: Newcourt Communications Finance Corporation | |
|---|---|---|---|
| dress | 150 CAMBRIDGEPARK DRIVE | 2 Gatehall Drive, Parsippany, NJ 07054 | |
| y / State / Zip | CAMBRIDGE, MA 02140 | Lease Number E212580 | Schedule Number 00520 |
| ELLER: | LUCENT TECHNOLOGIES INC | | Total Price including Installation/One-Time Charges |

Description of Items to be Leased (the Equipment)

Equipment subject hereto shall include the LUCENT VOICEMAIL SETS PACKS PBX CMS SOFTWARE UPGD and all other items of equipment, and all attachments, alterations, and additions thereto, and all parts thereof, and a right to use license for any software related thereto and related documentation, set forth in the attached copy(s) of the equipment orders(s) between the Lessee and the Seller or Supplier, consisting of 17 page(s), and all amendments or supplements to such equipment order(s) as reflected in the invoice(s) of the Seller or Supplier.

This Schedule also includes the financing of Schedules: 00010, 00030, 00060, 00070, 00090, 00140, 00150, 00160, 00180, 00220, 00230, 00240, 00250, 00271, 00281, 00300, 00310, ▆▆▆ 00360, ▆▆▆ 00390, 00400, 00410, 00421, 00470 and 00510 and the equipment subject hereto shall also include all of the equipment previously subject to Schedules: 00010, 00030, 00060, 00070, 00090, 00140, 00150, 00160, 00180, 00220, 00230, 00240, 00250, 00271, 00281, 00300, 00310, 00330, 00340, 00360, 00370, 00390, 00400, 00410, 00421, 00470 and 00510.

| | Yes | No | Total This Page | $ 0.00 |
|---|---|---|---|---|
| ption A. | [X] | [ ] | Sub Total(s) from Attached (17) Additional Pages | $ 678,231.91 |
| essee selects a fair market value purchase ption and a fair rental value renewal option. | Yes | No | | |
| ption B. | [ ] | [X] | Total Purchase Price (Sum of total prices including Installation/one-time charges) | $ 678,231.91 |
| essee selects (i) a fixed price purchase option f either $ or % of the Total Purchase Price, nd (ii) a fixed price renewal option of % f the periodic Rental Payment. | | | Advance Rent $ 72,201.85 | Rental Payment $ 72,201.85 |
| HE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER MPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Rental Payment Period Monthly | Latest Commencement Date 10/30/98 |
| Equipment Location 10 MOULTON ST CAMBRIDGE, MA 02138    186 B ST NEEDHAM, MA 02194 | | | Length of Initial Term 60 months | |

HIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) IY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND CONDITIONS ( WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS, LESSOR AGREES TO LEASE FROM ESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS CHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR NY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES NY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR ODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT..THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORPORATION | NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| Lessee | |
| By: X _Bruce Haskin_ | By: X _G. Kammerer_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| BRUCE HASKIN | G. KAMMERER, CCO |
| Print Name and Title | Print Name and Title |
| 10-30-98 | 11/24/98 |
| | Date |

MELAIV – LTPF-CC05B 8/98

The terms and conditions set forth below shall app. _ Options A and B on the front of this Schedule; provided, however, that Lessee may select only one of the two aforementioned options. If Lessee selects Option A, the Tax Indemnity provision set forth below (Section 4) shall apply to this Schedule. If no selection is indicated on the front of this Schedule, Lessee shall be deemed to have selected Option A.

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payments shall mean the estimates thereof specified on the front of this Schedule, as adjusted pursuant to Section 7 of the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule.

1.   OPTION A – FAIR MARKET VALUE PURCHASE AND RENEWAL OPTIONS. (a) If Option A has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 1 below), Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below); provided, however, that the foregoing renewal option may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b)   If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c)   If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d)   Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessor's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e)   If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2.   OPTION B – FIXED PRICE PURCHASE AND RENEWAL OPTIONS. (a) If Option B has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following fixed price purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term for the amount specified on Page 1 of this Schedule (Sale Price); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months at the periodic Rental Payment amount specified in Option B on Page 1 of this Schedule or, if no such amount is specified, at Fair Rental Value (Renewal Rental Payment); provided, however, that the foregoing renewal option may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b)   If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Sale Price at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Renewal Rental Payment on the same date each period that the Rental Payment was due during the Initial Term.

(c)   If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Sale Price as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d)   If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 2, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

3.   LESSOR'S RETURN. (a) Stipulated Loss Value. If Section 13 of the Agreement provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 3% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default to the end of the Applicable Term for the Equipment existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) if Option A of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment; plus (iii) if Option B of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the purchase option amount set forth on Page 1 of this Schedule. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price.

(b)   Casualty Percentage. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on Page 1 of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater.

4.   TAX INDEMNITY. (a) If Option A has been selected, Lessor intends to take accelerated cost recovery deductions (Recovery Deductions) under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended (Code), and accelerated depreciation deductions under applicable state law (Depreciation Deductions). Accordingly, Lessee makes the following representations, warranties and covenants: (i) at the time Lessee accepts the Equipment pursuant to Section 3 of the Agreement, the Equipment will have been "placed in service" within the meaning of sections 167 and 168 of the Code; (ii) the Total Purchase Price shall qualify for Recovery Deductions and Depreciation Deductions (with the exception of any items that are excluded by specific language on Page 1 of this Schedule and any increase in the Total Purchase Price that is attributable to any accrued interest under a Financing Agreement); (iii) neither Lessee, any of its affiliates, nor any of its successors, sublessees or assignor was, is, or will become a tax-exempt entity described in section 168 (h) (2) of the Code at any time during the Term of this Schedule will Lessee (or any preceding the Commencement Date; and (iv) at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action (whether or not such act or omission is otherwise required by the Agreement) that results in a loss, reduction, deferral, recapture or other unavailability to Lessor of any part of the Recovery Deductions or Depreciation Deductions. If, because of a breach of this Section 4(a), Recovery Deductions or Depreciation Deductions are lost, reduced, deferred, recaptured or otherwise made unavailable to Lessor (Tax Loss), Lessor shall, upon demand by Lessor, promptly pay damages to Lessor. The amount of such damages shall be the amount necessary to provide Lessor with a Net Economic Return (as defined in Section 4(c) below) equal to the Net Economic Return that Lessor would have realized if it had not suffered a Tax Loss. A Loss or damage to the Equipment will not constitute a breach of this Section 4(a) if it does not result in the payment of the Lessor's Return described in Section 13 of the Agreement.

(b)   The amount of each periodic Rental Payment remaining to be paid during the Applicable Term (as previously adjusted pursuant to this Section 4(b)) shall be adjusted, upwards or downwards, if changes are made to the Code (including changes in the corporate income tax rates) or any regulations promulgated thereunder that affect the federal income tax consequences to Lessor that were contemplated by Lessor when it determined the amount of the periodic Rental Payment then in effect (Tax Law Change). The net effect of any adjustment under this Section 4(b) shall be to provide Lessor a Net Economic Return equal to the Net Economic Return that Lessor would have realized if no Tax Law Change had occurred.

(c)   Any damages required by Section 4(a) above and any adjustment required by Section 4(b) above shall be in the amount necessary to provide Lessor a net after-tax yield, net after-tax cash flow and net after-tax book earnings (Net Economic Return) equal to the Net Economic Return Lessor would have realized with respect to the transaction contemplated by this Schedule if a Tax Loss or Tax Law Change (as applicable) had not occurred, assuming Lessor would fulfill all of its obligations hereunder, and shall be based upon the same assumptions and pricing analysis used by Lessor in determining the amount of the periodic Rental Payment then in effect, except to the extent such assumptions are affected by the Tax Loss or Tax Law Change (as applicable) at issue. Without limiting the generality of the foregoing, it shall be irrebuttably presumed that all income of Lessor for any year is subject to tax at the highest then applicable federal income tax rate generally applicable to corporations and that Lessor has sufficient taxable income to offset all deductions arising hereunder.

(d)   With respect to any damages or adjustments calculated by Lessor as set forth above (Calculation Amount), at the request and expense of Lessee, Lessor shall submit the assumptions and calculations underlying any such Calculation Amount to Lessor's independent certified public accountants for verification of the maintenance of Lessor's Net Economic Return. Such accountants' determination that the Calculation Amount does or does not maintain Lessor's Net Economic Return (and, in the case of the latter, such accountants' determination of the adjusted amount that would so maintain such Net Economic Return) shall be binding upon Lessor and Lessee. Lessee agrees that any information provided to such accountants by Lessor constitutes private, proprietary and confidential property of Lessor and that no person other than Lessor and such accountants shall be entitled access thereto.

5.   SECURITY INTEREST. If Option A has been selected, Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security or if Option B has been selected, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, when permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent.

6.   LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of any additional equipment by sending Lessor a purchase order or by contacting Lessor or the Seller by telephone or in writing. If the total cost of such additional equipment (Additional Equipment) is Twenty-Five Thousand Dollars or less and if Lessor agrees to lease such Additional Equipment to Lessee, Lessor will signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Length of Initial Term, the applicable purchase and renewal options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE SHALL BE DEEMED TO HAVE (a) IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT; (b) AUTHORIZED LESSOR TO PAY THE SELLER FOR THE ADDITIONAL EQUIPMENT AND (c) AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS SCHEDULE. If Lessee objects in the manner and within the timeframes set forth above, the Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Purchase Documents.

7.   ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interest in and to (i) the Equipment described in this Schedule and (ii) any Purchase Documents (including any purchase order issued by Lessee or Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment (if and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if no assignment had not occurred. If Seller is not an affiliate of Lessor, Lessor shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, or an additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, Licenses) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

.02525

AIV LTPF-CCO5B 8-98

# Master Equipment Lease
## Agreement Schedule


Product Finance

Lucent Technologies

| | |
|---|---|
| **SSEE:** BBN CORPORATION | **LESSOR:** Newcourt Communications Finance Corporation |
| 150 CAMBRIDGEPARK DRIVE | 2 Gatehall Drive, Parsippany, NJ 07054 |

| State / Zip | | Lease Number | Schedule Number |
|---|---|---|---|
| CAMBRIDGE, MA 02140 | | E212580 | 00550 |

| | Total Price Including Installation/One-Time Charges |
|---|---|
| **LLER:** LUCENT TECHNOLOGIES INC | |

### Description of Items to be Leased (the Equipment)

This Schedule describes a coterminous addition (Addition) to the equipment described in Schedule Number 00200 (Primary Schedule). Accordingly, (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary schedule, Lessee shall pay Lessor the Lessor's Return with respect to this schedule.

Equipment subject hereto shall include the LUCENT MERLIN LEGEND ADD ON EQUIPMENT and all other items of equipment, and all attachments, alterations, and additions thereto, and all parts thereof, and a right to use license for any software related thereto and related documentation, set forth in the attached copy(s) of the equipment orders(s) between the Lessee and the Seller or Supplier, consisting of 5 page(s), and all amendments or supplements to such equipment order(s) as reflected in the invoice(s) of the Seller or Supplier.

| | Yes | No | | |
|---|---|---|---|---|
| on A........ | ☒ | ☐ | **Total This Page** | $ 0.00 |
| ee selects a fair market value purchase n and a fair rental value renewal option. | | | Attached (5) Sub Total(s) from Additional Pages | $ 34,338.00 |
| | Yes | No | | |
| on B........ | ☐ | ☒ | **Total Purchase Price** (Sum of total prices including installation/one-time charges) | $ 34,338.00 |
| ee selects (i) a fixed price purchase option her $_____ or _____% of the Total Purchase Price, | | | | |
| ii) a fixed price renewal option of _____% periodic Rental Payment. | | | Advance Rent $ 0.00 | Rental Payment 885.04 |
| TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER RTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Rental Payment Period Monthly | Latest Commencement Date 10/30/98 |
| ment Location | | | Length of Initial Term | |
| 2400 BROADWAY STE 375 SANTA MONICA, CA 90404 | | | 43 months | |

CHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON RONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS, LESSEE AGREES TO LEASE FROM R, AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS ULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR SSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND NTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR T MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES D ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORPORATION | NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| Lessee X /Bruce Ha— | By: X |
| Lessee Authorized Signature | Lessor Authorized Signature |
| BRUCE HASKIN | |
| Print Name and Title | Print Name and Title |

MELAIV – LTPF-CC05B 8/98

The terms and conditions set forth below shall app,  Options A and B on the front of this Schedule; provided, however, that Lessee may select only one of the two aforementioned options. If Lessee selects Option A, the Tax Indemnity provision set forth below (Section 4) shall apply to this Schedule. If no selection is indicated on the front of this Schedule, Lessee shall be deemed to have selected Option A.

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as adjusted pursuant to Section 7 of the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule.

1.    OPTION A – FAIR MARKET VALUE PURCHASE AND RENEWAL OPTIONS. (a)  If Option A has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written notice no later than 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below); provided, however, that the foregoing renewal options may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b)    If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c)    If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d)    Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e)    If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2.    OPTION B – FIXED PRICE PURCHASE AND RENEWAL OPTIONS. (a)  If Option B has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following fixed price purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term for the amount specified on Page 1 of this Schedule (Sale Price); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months at the periodic Rental Payment amount specified in Option B on Page 1 of this Schedule or, if no such amount is specified, at Fair Rental Value (Renewal Rental Payment); provided, however, that the foregoing renewal option may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b)    If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Sale Price at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Renewal Rental Payment on the same date each period that the Rental Payment was due during the Initial Term.

(c)    If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Sale Price as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d)    If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 2, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

3.    LESSOR'S RETURN. (a) Stipulated Loss Value. If Section 13 of the Agreement provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 5% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term applicable Term); plus (ii) if Option A of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the Fair Market Value of the Equipment, or, if Option B of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the purchase option amount set forth on Page 1 of this Schedule. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price.

(b)    Casualty Percentage. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on Page 1 of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater.

4.    TAX INDEMNITY. (a)  If Option A has been selected, Lessor intends to take accelerated cost recovery deductions (Recovery Deductions) under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended (Code), and accelerated depreciation deductions under applicable state law (Depreciation Deductions). Accordingly, Lessee makes the following representations, warranties and covenants; (i) at the time Lessee accepts the Equipment pursuant to Section 3 of the Agreement, the Equipment will have been "placed in service" within the meaning of sections 167 and 168 of the Code; (ii) the Total Purchase Price shall qualify for Recovery Deductions and Depreciation Deductions (with the exception of any items that are excluded by specific language on Page 1 of this Schedule and any increase in the Total Purchase Price that is attributable to any accrued interest under a Finance Agreement); (iii) neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is, or will become a tax-exempt entity described in section 168 (h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date; and (iv) at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action (whether or not such act or omission is otherwise required by the Agreement) that results in a loss, reduction, deferral, recapture or other unavailability to Lessor of any part of the Recovery Deductions or Depreciation Deductions. If, because of a breach of this Section 4(a), Recovery Deductions or Depreciation Deductions are lost, reduced, deferred, recaptured or otherwise made unavailable to Lessor (Tax Loss), Lessee shall, upon demand by Lessor, promptly pay damages to Lessor. The amount of such damages shall be the amount necessary to provide Lessor with a Net Economic Return (as defined in Section 4(c) below) equal to the Net Economic Return that Lessor would have realized if such Tax Loss had not suffered a Tax Loss. A Loss or damage to the Equipment will constitute a breach of this Section 4(a) if it does not result in the payment of the Lessor's Return described in Section 13 of the Agreement.

(b)    The amount of each periodic Rental Payment remaining to be paid during the Applicable Term (as previously adjusted pursuant to Section 4(b)) shall be adjusted, upwards or downwards, if changes are made in the Code (including changes in the corporate income tax rate) or any regulations promulgated thereunder that affect the federal income tax consequences to Lessor that were contemplated by Lessor when it determined the amount of the periodic Rental Payment then in effect (Tax Law Change). The net effect of any adjustment under this Section 4(b) shall be to provide Lessor a Net Economic Return equal to the Net Economic Return that Lessor would have realized if no Tax Law Change had occurred.

(c)    Any damages required by Section 4(a) above and any adjustment required by Section 4(b) above shall be in the amount necessary to provide Lessor with a Net After-tax yield, net after-tax cash flow and after-tax book earnings (Net Economic Return) equal to the Net Economic Return Lessor would have realized with respect to the transaction contemplated by this Schedule if a Tax Loss or Tax Law Change (as applicable) had not occurred, assuming Lessee would fulfill all of its obligations hereunder, and shall be based upon the same assumptions and pricing analysis used by Lessor in determining the amount of the periodic Rental Payment that is effect, except to the extent such assumptions are affected by the Tax Loss or Tax Law Change (as applicable) at issue. Without limiting the generality of the foregoing, it shall be irrebuttably presumed that all income of Lessor for any year is subject to tax at the highest then applicable federal income tax rate generally applicable to corporations and that Lessor has sufficient taxable income to offset all deductions arising hereunder.

(d)    With respect to any damages or adjustments calculated by Lessor as set forth above (Calculation Amount), at the request and expense of Lessee, Lessor shall submit the assumptions and calculations underlying any such Calculation Amount to Lessor's independent certified public accountants for verification of the maintenance of Lessor's Net Economic Return. Such accountants' determination that the Calculation Amount does or does not maintain Lessor's Net Economic Return (and, in the latter event, such accountants' determination of the adjusted amount that would so maintain such Net Economic Return) shall be binding upon Lessor and Lessee. Lessee agrees that any information provided to such accountants by Lessor constitutes private, proprietary and confidential property of Lessor and that no person other than Lessor and such accountants shall be entitled access thereto.

5.    SECURITY INTEREST. If Option B has been selected, Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security or if Option B has been selected, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or any thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent.

6.    LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of any additional equipment by sending Lessor a purchase order or by contacting Lessor or the Seller by telephone or in writing. If the total cost of such additional equipment (Additional Equipment) is Twenty-Five Thousand Dollars or less and if Lessor agrees to lease such Additional Equipment to Lessee, Lessor will signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Length of Initial Term, the applicable purchase and renewal options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE SHALL BE DEEMED TO HAVE (a) IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT, (b) AUTHORIZED LESSOR TO PAY THE SELLER FOR THE ADDITIONAL EQUIPMENT AND (c) AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS SCHEDULE. If Lessee objects in the manner and within the timeframe set forth above, the Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Purchase Documents.

7.    ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interest in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessee or Lessor's agent) relating thereto. Except for the obligation to pay Seller for the Equipment (if and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall not be liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if no assignment had not occurred. If Seller is not satisfied with such assignment (Seller's written consent to such assignment and written agreement that upon any notice of the Equipment to Lessor, at no additional fee or charge Seller will either (i) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent sub-user of the Equipment; or (ii) grant any subsequent sub-user of the Equipment an applicable License, subject to Seller's then-current licensing provision. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

.03473    Schaumberg

ELAIV LTPF-CC058 8-98

# Master Equipment Lease
## greement Schedule

Product Finance



Lucent Technologies

| | |
|---|---|
| **ESSEE:** BBN CORPORATION | **LESSOR: Newcourt Communications Finance Corporation** |
| Address    150 CAMBRIDGEPARK DRIVE | 2 Gatehall Drive, Parsippany, NJ 07054 |
| ity / State / Zip    CAMBRIDGE, MA 02140 | Lease Number   E212580 | Schedule Number   00600 |

| | |
|---|---|
| **SELLER:** LUCENT TECHNOLOGIES | Total Price Including Installation/One-Time Charges |

Description of Items to be Leased (the Equipment)

This Schedule describes a coterminous addition (Addition) to the equipment described in Schedule Number 00020 (Primary Schedule). Accordingly, (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor´s Return with respect to the Primary schedule, Lessee shall pay Lessor the Lessor´s Return with respect to this schedule.
Equipment subject hereto shall include the LUCENT INTUITY NETWORKING and all other items of equipment, and all attachments, alterations, and additions thereto, and all parts thereof, and a right to use license for any software related thereto and related documentation, set forth in the attached copy(s) of the equipment orders(s) between the Lessee and the Seller or Supplier, consisting of 2 page(s), and all amendments or supplements to such equipment order(s) as reflected in the invoice(s) of the Seller or Supplier.
IL Tax of $ 2525.45 is included in the Total Purchase Price.

| | Yes | No | Total This Page | $    0.00 |
|---|---|---|---|---|
| **Option A** | ☒ | ☐ | Attached ( )2  Sub Total(s) from Additional Pages | $  30,611.50 |
| Lessee selects a fair market value purchase option and a fair rental value renewal option. | | | | |
| | Yes | No | **Total Purchase Price** (Sum of total prices including installation/one-time charges) | $  30,611.50 |
| **Option B** | ☐ | ☒ | | |
| Lessee selects (i) a fixed price purchase option of either $____ or ____% of the Total Purchase Price, and (ii) a fixed price renewal option of ____% of the periodic Rental Payment. | | | Advance Rent   $  1,063.12 | Rental Payment   $  1,063.12 |
| THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Rental Payment Period    Monthly | Latest Commencement Date   10/30/98 |
| Equipment Location | | | Length of Initial Term    31 months | |
| 1515 WOODFIELD ROAD SCHAUMBURG, IL 60173 | | | | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND CONDITIONS ( WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS AND HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OF MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORPORATION | NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: **X** _Bruce Ske_    Lessee Authorized Signature | By: **X** _____    Lessor Authorized Signature |
| BRUCE HASKIN    Print Name and Title    12/23/98 | Print Name and Title |

MELAIV – LTPF-CC05B 8/98

The terms and conditions set forth below shall app_____. Options A and B on the front of this Schedule; provided, however, that Lessee may select only one of the two aforementioned options. If Lessee selects Option A, the Tax Indemnity provision set forth below (Section 4) shall apply to this Schedule. If no selection is indicated on the front of this Schedule, Lessee shall be deemed to have selected Option A.

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as adjusted pursuant to Section 7 of the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement; and/or any amendments thereto entered into prior to the execution of this Schedule.

**1.    OPTION A – FAIR MARKET VALUE PURCHASE AND RENEWAL OPTIONS.** (a) If Option A has been selected, on Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below); provided, however, that the foregoing renewal options may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b)    If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the Renewal Term. Throughout the Renewal Term, Lessee shall pay the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c)    If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d)    Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessor's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e)    If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessor shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**2.    OPTION B – FIXED PRICE PURCHASE AND RENEWAL OPTIONS.** (a) If Option B has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following fixed price purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term for the purchase price specified on Page 1 of this Schedule; or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months at the periodic Rental Payment amount specified in Option B on Page 1 of this Schedule or, if no such amount is specified, at Fair Rental Value (Renewal Rental Payment); provided, however, that the foregoing renewal options may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b)    If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Sale Price at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Renewal Rental Payment on the same date each period that the Rental Payment was due during the Initial Term.

(c)    If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Sale Price as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d)    If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 2, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessor shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**3.    LESSOR'S RETURN.** *Stipulated Loss Value.* If Section 13 of the Agreement provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 3% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (applicable Term)), plus (ii) if Option A of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment, plus (iii) if Option B of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the purchase option amount set forth on Page 1 of this Schedule. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price.

(b)    *Casualty Percentage.* For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on Page 1 of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater.

**4.    TAX INDEMNITY.** (a) If Option A has been selected, Lessor intends to take accelerated cost recovery deductions (Recovery Deductions) under sections 167(a) and 168(b) (i) of the Internal Revenue Code of 1986, as amended (Code), and accelerated depreciation deductions under applicable state law (Depreciation Deductions). Accordingly, Lessee makes the following representations, warranties and covenants: (i) at the time Lessor accepts the Equipment pursuant to Section 3 of the Agreement, the Equipment will have been "placed in service" within the meaning of sections 167 and 168 of the Code; (ii) the Total Purchase Price shall qualify for Recovery Deductions and Depreciation Deductions (with the exception of any items that are excluded by operation of law); (iii) the Schedule and any increase in the Total Purchase Price that is attributable to any accrued interest under a Financing Agreement; (iii) neither Lessor, any of its affiliates, nor any of its successors, sublessees or assigns was, in or will become a tax-exempt entity described in section 168 (h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date; and (iv) at no time during the Term of this Schedule will Lessor (or any of its successors, sublessees or assigns) take any action or fail to take any action (whether or not such act or omission is otherwise required by the Agreement) that results in a loss, reduction, deferral, recapture or other unavailability to Lessor of any part of the Recovery Deductions or Depreciation Deductions. If, because of a breach of this Section 4(a), Recovery Deductions or Depreciation Deductions are lost, reduced, deferred, recaptured or otherwise made unavailable to Lessor (Tax Loss), Lessee shall, upon demand by Lessor, promptly pay damages to Lessor. The amount of such damages shall be the amount necessary to provide Lessor with a Net Economic Return (as defined in Section 4(c) below) equal to the Net Economic Return that Lessor would have realized if there had not been a Tax Loss. A Loss or damage to the Equipment will constitute a breach of this Section 4(a) if it does not result in the payment of the Lessor's Return described in Section 13 of the Agreement.

(b)    The amount of each periodic Rental Payment remaining to be paid during the Applicable Term (as previously adjusted pursuant to this Section 4(b)) shall be adjusted, upwards or downwards, if changes are made to the Code (including changes in the corporate income tax rate) or any regulations promulgated thereunder that affect the federal income tax consequences to Lessor that were contemplated by Lessor when it determined the amount of the periodic Rental Payment then in effect (Tax Law Change). The net effect of any adjustment under this Section 4(b) shall be to provide Lessor a Net Economic Return equal to the Net Economic Return that Lessor would have realized if no Tax Law Change had occurred.

(c)    Any damages required by Section 4(a) above and any adjustment required by Section 4(b) above shall be in the amount necessary to provide Lessor with a tax-exempt, net after-tax cash flow and net after-tax book earnings (Net Economic Return) equal to the Net Economic Return Lessor would have realized with respect to the transaction contemplated by this Schedule if a Tax Loss or Tax Law Change (as applicable) had not occurred, assuming Lessee would fulfill all of its obligations hereunder, and shall be based upon the same assumptions and pricing analysis used by Lessor in determining the amount of the periodic Rental Payment then in effect, except to the extent such assumptions are affected by the Tax Loss or Tax Law Change (as applicable) at issue. Without limiting the generality of the foregoing, it shall be irrebuttably presumed that all income of Lessor for any year is subject to tax at the highest then applicable federal income tax rate generally applicable to corporations and that Lessor has sufficient taxable income to offset all deductions arising hereunder.

(d)    With respect to any damages or adjustments calculated by Lessor as set forth above (Calculation Amount), at the request and expense of Lessee, Lessor shall submit the assumptions and calculations underlying any such Calculation Amount to Lessor's independent certified public accountants for verification of the maintenance of Lessor's Net Economic Return. Such accountants' determination that the Calculation Amount does or does not maintain Lessor's Net Economic Return (and, in the case of the latter, such accountants' determination of the adjusted amount that would so maintain such Net Economic Return) shall be binding upon Lessor and Lessee. Lessee agrees that any information provided to such accountants by Lessor constitutes private, proprietary and confidential property of Lessor and that no person other than Lessor and such accountants shall be entitled access thereto.

**5.    SECURITY INTEREST.** If Option A has been selected, Lessor and Lessee intend that the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a loan intended for security or if Option B has been selected, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease documents (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent.

**6.    LEASING ADDITIONAL EQUIPMENT.** Lessor may request Lessee to finance the costs of any additional equipment by sending Lessor a purchase order or by contacting Lessor or the Seller by telephone or in writing. If the total cost of such additional equipment (Additional Equipment) is Twenty-Five Thousand Dollars or less and if Lessor agrees to lease such Additional Equipment to Lessee, Lessor will signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Length of Initial Term, the applicable purchase and renewal options and such other terms and conditions that apply to such lease. **LESSEE AGREES THAT IF LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE SHALL BE DEEMED TO HAVE (a) IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT, (b) AUTHORIZED LESSOR TO PAY THE SELLER FOR THE ADDITIONAL EQUIPMENT, AND (c) AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS SCHEDULE.** If Lessee objects in the manner and within the timeframe set forth above, the Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Purchase Documents.

**7.    ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessee or Lessor's agent) relating thereto. Except for the obligation to pay Seller for the Equipment (if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement), such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if no assignment had not occurred. If Seller is not an affiliate of Lessor, Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

ELAIV LTPF-CC05B 8/98

**Product Finance**

**Lucent Technologies**

# MASTER EQUIPMENT LEASE AGREEMENT SCHEDULE

| LESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| Address: 150 Cambridge Park Drive | Address: 2 Gatehall Drive Parsippany, NJ 07054 |
| City, State, Zip: Cambridge, MA 02140 | Lease Number: E212580 / Schedule Number: 00640 |
| SELLER: LUCENT TECHNOLOGIES INC. | |

### Description of Items to be Leased (the Equipment)

This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00170 (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

**Lucent Definity G3I Addon Equipment** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

| | Yes | No | | |
|---|---|---|---|---|
| Option A — Lessee selects a fair market value purchase option and a fair rental value renewal option. | ☒ | ☐ | Total This Page | Total Price Including Installation/One-Time Charges $73,127.50 |
| Option B — Lessee selects (i) a fixed price purchase option of either $____ or ____% of the Total Purchase Price, and (ii) a fixed price renewal option of ____% of the period Rental Payment. | ☐ | ☒ | Sub Total(s) From Attached (  ) Additional Pages | |
| THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Total Purchase Price (Sum of total prices including installation/one-time charges) | $73,127.50 |
| | | | Advance Rent $2,466.29 / Rental Payment Period: Monthly | Rental Payment: $2,466.29 |
| | | | Latest Commencement Date 09/30/1999 | |
| Equipment Location: 8380 Patuxent, Columbia, MD 21046 | | | Length of Initial Term 32 months | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO THE TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OF TRANSFER PURSUANT TO SECTION 13 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEES OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS . TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: x _William W. Wilson_ | By: x _[signature]_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| Print Name & Title: William W. Wilson — Fin Mgr | Print Name & Title: CHRISTINE WACKER  Account Mgr |
| Date: Nov 2, 1999 | Date: 11-22-99 |

Page 1

ELAIV LTPF-CC05B 6:96

Product Finance

Lucent Technologies

# 'ASTER EQUIPMENT LEASE AGREEMENT SCHEDULE

| SEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| ddress:<br>50 Cambridge Park Drive | Address: 2 Gatehall Drive<br>Parsippany, NJ 07054 |
| ty, State, Zip<br>ambridge, MA 02140 | Lease Number:<br>E212580 | Schedule Number:<br>00690 |
| ELLER:<br>UCENT TECHNOLOGIES INC. | |

### Description of Items to be Leased (the Equipment)

is Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00320 (Primary Schedule). Accordingly (a) if Lessee purchases renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor ssor's Return with respect to this Schedule.

**cent Definity G3r Addon Equipment** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; d any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

| | Yes | No | | Total Price Including<br>Installation/One-Time Charges |
|---|---|---|---|---|
| ption A ............................................<br>ssee selects a fair market value purchase option and a fair rental<br>lue renewal option. | ☒ | ☐ | Total This Page | $335,336.10 |
| ption B ............................................<br>ssee selects (i) a fixed price purchase option<br>either $_____ or _____% of the Total Purchase Price, and (ii) a<br>ed price renewal option of _____% of the period Rental Payment. | ☐ | ☒ | Sub Total(s) From Attached<br>(    ) Additional Pages | |
| | | | Total Purchase Price<br>(Sum of total prices including<br>installation/one-time charges) | $335,336.10 |
| IE TERMS AND CONDITIONS OF THE FOREGOING<br>TIONS AND OTHER IMPORTANT PROVISIONS ARE SET<br>RTH ON THE BACK OF THIS SCHEDULE. | | | Advance<br>Rent<br>$8,137.81 | Rental Payment<br>Period:<br>Monthly | Rental Payment:<br>$8,137.81 |
| | | | Latest Commencement Date<br>09/30/1999 | |
| uipment Location:<br>Sylvan Rd, Waltham, MA 02254 | | | Length of Initial Term<br>46 months | |

S SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS SEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO CH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE ERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR NSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN ORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS . TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY D ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS CRIBED IN THE AGREEMENT. THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| y: x _William W Wilson_<br>Lessee Authorized Signature | By: x _[signature]_<br>Lessor Authorized Signature |
| _William W. Wilson — Mgr Finance_<br>Print Name & Title | _Ed Reid — Director of Operations RA._<br>Print Name & Title |
| _November 2, 1999_<br>Date | _9/14/03_<br>Date |

Page 1

ELAIV LTPF-C006B 8/98

**Product Finance**

**Lucent Technologies**

# :IASTER EQUIPMENT LEASE AGREEMENT SCHEDULE

| :SEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| :ddress:<br>50 Cambridge Park Drive | Address:  2 Gatehall Drive<br>Parsippany, NJ 07054 | |
| :ity, State, Zip<br>:ambridge, MA  02140 | Lease Number:<br>E212580 | Schedule Number:<br>00710 |

:ELLER:
.UCENT TECHNOLOGIES INC.

Description of Items to be Leased (the Equipment)

:his Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00520 (Primary Schedule).  Accordingly (a) if Lessee purchases
' renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length
: the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the
:essor's Return with respect to this Schedule.
.ucent Definity G3r Addon Equipment and other related items, including any attachments, alterations, and additions thereto; any software license or rights;
:nd any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

| | Yes | No | | | Total Price Including Installation/One-Time Charges |
|---|---|---|---|---|---|
| :ption A ...............................................<br>.essee selects a fair market value purchase option and a fair rental<br>.lue renewal option. · | ☒ | ☐ | Total This Page | | **$314,771.15** |
| :ption B ...............................................<br>.essee selects (i) a fixed price purchase option<br>: either $_____ or ____% of the Total Purchase Price, and (ii) a<br>:ed price renewal option of _____% of the period Rental Payment. | ☐ | ☒ | Sub Total(s) From Attached<br>(      ) Additional Pages | | |
| | | | Total Purchase Price<br>(Sum of total prices including<br>installation/one-time charges) | | $314,771.15 |
| :iE TERMS AND CONDITIONS OF THE FOREGOING<br>:PTIONS AND OTHER IMPORTANT PROVISIONS ARE SET<br>:ORTH ON THE BACK OF THIS SCHEDULE. | | | Advance<br>Rent<br>$7,355.64 | Rental Payment<br>Period:<br>Monthly | Rental Payment:<br>$7,355.64 |
| | | | Latest Commencement Date<br>09/30/1999 | | |
| :quipment Location:<br>) Moulton, Cambridge, MA 02140 | | | Length of Initial Term<br>48 months | | |

:IS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS
:SSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO
:CH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE
:FERENCED EQUIPMENT. IT IS UNDERSTOOD  AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR
:NSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY
: THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN
:ORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS . TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY
:D ALL RIGHTS AND REMEDIES CONFERRED UPON  LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS
:CRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| :ESSEE: BBN CORPORATION | LESSOR:  NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| :y: x _William W Wilson_ | By: x |
| Lessee Authorized Signature | Lessor Authorized Signature |
| _William W Wilson_   Finance mgr | |
| Print Name & Title | Print Name & Title   2/14/03 |
| _November 2, 1999_ | |
| Date | Date |

Page 1

ELAIV LTPF-CC05B 6/98

Product Finance

Lucent Technologies

# MASTER EQUIPMENT LEASE AGREEMENT SCHEDULE

| SEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| ddress:<br>50 Cambridge Park Drive | Address:  2 Gatehall Drive<br>Parsippany, NJ  07054 | |
| ity, State, Zip<br>ambridge, MA  02140 | Lease Number:<br>E212580 | Schedule Number:<br>00720 |
| ELLER:<br>UCENT TECHNOLOGIES INC. | | |

**Description of Items to be Leased (the Equipment)**

nis Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00320 (Primary Schedule). Accordingly (a) if Lessee purchases renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor ssor's Return with respect to this Schedule.

**ucent Definity G3r Addon Equipment** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; d any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

| | | Yes | No | | | Total Price Including Installation/One-Time Charges |
|---|---|---|---|---|---|---|
| ption A ............................................<br>ssee selects a fair market value purchase option and a fair rental lue renewal option. | | ☒ | ☐ | **Total This Page** | | $288,282.42 |
| ption B ............................................<br>ssee selects (i) a fixed price purchase option either $_____ or _____% of the Total Purchase Price, and (ii) a ted price renewal option of _____% of the period Rental Payment. | | ☐ | ☒ | Sub Total(s) From Attached<br>(     ) Additional Pages | | |
| TERMS AND CONDITIONS OF THE FOREGOING PTIONS AND OTHER IMPORTANT PROVISIONS ARE SET ORTH ON THE BACK OF THIS SCHEDULE. | | | | Total Purchase Price<br>(Sum of total prices including installation/one-time charges) | | $288,282.42 |
| | | | | Advance Rent<br>$6,995.93 | Rental Payment Period:<br>Monthly | Rental Payment:<br>$6,995.93 |
| | | | | Latest Commencement Date<br>09/30/1999 | | |
| quipment Location:<br>Vandergraf Rd, Burlington, MA  01803 | | | | Length of Initial Term<br>46 months | | |

S SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS SSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO CH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE ERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR ANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN ORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY D ALL RIGHTS AND REMEDIES CONFERRED UPON  LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS CRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| ESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| ly: x _William W Wilson_ | By: x _[signature]_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| _William W Wilson — Finance mgr_ | _[signature] Director of Operations OS._ |
| Print Name & Title | Print Name & Title |
| _November 2, 1999_ | _2/14/03_ |
| Date | Date |

Page I

LAIV LTPF-CC05B 8-98

# ASTER EQUIPMENT LEASE
# GREEMENT SCHEDULE



Product Finance

Lucent Technologies

| SEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| ddress<br>50 Cambridge Park Drive | 2 Gatehall Drive, Parsippany, NJ 07054 | |
| ty / State / Zip<br>ambridge, MA 02140 | Lease Number<br>E212580 | Schedule Number<br>00750 |

ELLER: LUCENT TECHNOLOGIES INC.

Total Price Including Installation/One-Time Charges

Description of Items to be Leased (the Equipment)

cent Technologies Definity Sets & Packs and other related items, including any attachments, alterations, and ditions thereto; any software license or rights; and any related documentation, all as may be more particularly scribed in the final invoice(s) from the Seller(s).

nis Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00170 rimary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, essee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as e Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with spect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

| | Yes | No | Total This Page | $62,472.35 |
|---|---|---|---|---|
| ption A ............................................. | ☒ | ☐ | Sub Total(s) From Attached (    ) Additional Pages | |
| essee selects a fair market value purchase tion and a fair rental value renewal option. | | | | |
| ption B ............................................. | ☐ | ☒ | Total Purchase Price (Sum of total prices including install-ation/one-time charges) | $62,472.35 |
| Lessee selects (i) a fixed price purchase option either $_____ or _____% of the Total Purchase Price, nd (ii) a fixed price renewal option of _____% the periodic Rental Payment. | | | Advance Rent<br>$2,174.10 | Rental Payment<br>$2,174.10 |
| *E TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND ER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF S SCHEDULE. | | | Rental Payment Period<br>Monthly | Latest Commencement Date<br>02/28/2000 |
| quipment Location<br>780 Patuxent Woods Dr, Columbia, MD 21046 | | | Length of Initial Term    28 months | |

IIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER PECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY IEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND ONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND SSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS HEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO :CTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS ID WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS :VIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS IDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, SSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER )NFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY THER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORPORATION | NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| Lessee<br>X _David B Monaghan_ | By: X _Christine Wacker_ |
| Lessor Authorized Signature<br>David B. Monaghan, Jr. | CHRISTINE WACKER    Account Mgr. |
| Print Name and Title<br>Vice President - Finance | Print Name and Title    3-9-2000 |
| Date    2/28/00 | Date |

ELAIV LTPF-CC056 8/98

**Lucent Technologies**
Product Finance

# MASTER EQUIPMENT LEASE AGREEMENT SCHEDULE

| LESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address:<br>50 Cambridge Park Drive | Address:  2 Gatehall Drive<br>Parsippany, NJ  07054 | |
| City, State, Zip<br>Cambridge, MA  02140 | Lease Number:<br>E212580 | Schedule Number:<br>00800 |

SELLER:
LUCENT TECHNOLOGIES INC.

Description of Items to be Leased (the Equipment)

Lucent Definity Prologix Systems and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

| | Yes | No | | |
|---|---|---|---|---|
| Option A ..............................................<br>Lessee selects a fair market value purchase option and a fair rental value renewal option. | ☒ | ☐ | Total This Page | Total Price Including Installation/One-Time Charges<br>$98,391.15 |
| Option B ..............................................<br>Lessee selects (i) a fixed price purchase option of either $_____ or ____% of the Total Purchase Price, and (ii) a fixed price renewal option of _____% of the period Rental Payment. | ☐ | ☒ | Sub Total(s) From Attached<br>(     ) Additional Pages | |
| | | | Total Purchase Price<br>(Sum of total prices including installation/one-time charges) | $98,391.15 |
| THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Advance Rent<br>$1,640.18 | Rental Payment Period:<br>Monthly | Rental Payment:<br>$1,640.18 |
| | | | Latest Commencement Date<br>09/30/1999 | |
| Equipment Location:<br>55 South Market St, 14th Flr, San Jose, CA  95113 | | | Length of Initial Term<br>60 months | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD  AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER.  LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS . TO THE EXTENT PERMITTED BY APPLICABLE LAW,  LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON  LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT)

| LESSEE: BBN CORPORATION | LESSOR:  NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: x _William W Wilson_ | By: x _Christine Waller_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| William W Wilson        Mgr Finance | CHRISTINE WALLER    Account Mgr |
| Print Name & Title | Print Name & Title |
| November 2, 1999 | 11-22-99 |
| Date | Date |

Page 1 of 1)

MELAIV LTPF-CC05B 8-96

# MASTER EQUIPMENT LEASE
# AGREEMENT SCHEDULE



Lucent Technologies

| LESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | | |
|---|---|---|---|
| Address<br>150 Cambridge Park Drive | 2 Gatehall Drive, Parsippany, NJ 07054 | | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>E212580 | | Schedule Number<br>00860 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|
| **Description of Items to be Leased (the Equipment)**<br>Lucent Technologies Definity G3si and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).<br><br>This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00320 (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule. | |

| | Yes | No | | |
|---|---|---|---|---|
| Option A ............................................................ | ☒ | ☐ | Total This Page | $261,390.86 |
| Lessee selects a fair market value purchase option and a fair rental value renewal option. | | | Sub Total(s) From<br>Attached (     ) Additional Pages | |
| Option B ............................................................ | ☐ | ☒ | Total Purchase Price<br>(Sum of total prices including install-ation/one-time charges) | $261,390.86 |
| Lessee selects (i) a fixed price purchase option of either $_____ or _____% of the Total Purchase Price, and (ii) a fixed price renewal option of _____% of the periodic Rental Payment. | | | Advance Rent<br>$6,245.41 | Rental Payment<br>$6,245.41 |
| THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Rental Payment Period<br>Monthly | Latest Commencement Date<br>02/28/2000 |
| Equipment Location<br>3 Burlington Woods, Burlington, MA 01803 | | | Length of Initial Term | 43 months |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IF EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

BBN CORPORATION
Lessee

By: X _David B. Monaghan_

Lessee Authorized Signature

Print Name and Title
David B. Monaghan, Jr.    Vice President - Finance

Date
2/28/00

NEWCOURT COMMUNICATIONS FINANCE CORPORATION

By: X _Jean Cote_

Lessor Authorized Signature
Jean Cote    Account Manager

Print Name and Title    3/9/00

Date

Page 1 of :

MELAIV – LTPF-CC05B 8/98

MELAIV LTPF-CO058 8-96

# MASTER EQUIPMENT LEASE AGREEMENT SCHEDULE



Lucent Technologies

| LESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | 2 Gatehall Drive, Parsippany, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>E212580 | Schedule Number<br>00870 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including<br>Installation/One-Time Charges |
|---|---|

Description of Items to be Leased (the Equipment)

**Lucent Technologies Definity Sets,Packs & Eqn** and other related Items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00320 (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

| | | Yes | No | | | |
|---|---|---|---|---|---|---|
| **Option A** ..... | | ☒ | ☐ | | Total This Page | $160,638.95 |
| Lessee selects a fair market value purchase option and a fair rental value renewal option. | | | | Attached ( ) Additional Pages | Sub Total(s) From | |
| **Option B** ..... | | ☐ | ☒ | | Total Purchase Price<br>(Sum of total prices including install-<br>ation/one-time charges) | $160,638.95 |
| Lessee selects (I) a fixed price purchase option of either $_____ or _____% of the Total Purchase Price, and (II) a fixed price renewal option of _____% of the periodic Rental Payment. | | | | Advance Rent<br>$3,838.15 | Rental Payment<br>$3,838.15 | |
| THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | | Rental Payment Period<br>Monthly | Latest Commencement Date<br>01/31/2000 | |
| Equipment Location<br>77 South Bedford St, Burlington, MA 01803 | | | | Length of Initial Term | 43 months | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORPORATION<br>Lessee | NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _David B Monaghan_ | By: X _Jean Cote_ |
| Lessee Authorized Signature<br>David B. Monaghan, Jr. | Lessor Authorized Signature<br>Jean Cote,      Account Manager |
| Print Name and Title<br>Vice President - Finance | Print Name and Title        3/9/00 |
| Date  2/28/00 | Date |

Page 1 of :

MELAIV – LTPF-CC05B 8/98

The terms and conditions set forth below shall apply. Options A and B on the front of this Schedule: provided, however, that Lessee may select only one of the two aforementioned options. If Lessee selects Option A, the Tax Indemnity provision set forth below (Section 4) shall apply to this Schedule. If no selection is indicated on the front of this Schedule, Lessee shall be deemed to have selected Option A.

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement (Agreement) specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as adjusted pursuant to Section 3 of the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule.

**1. OPTION A – FAIR MARKET VALUE PURCHASE AND RENEWAL OPTIONS.**

**2. OPTION B – FIXED PRICE PURCHASE AND RENEWAL OPTIONS.**

**3. LESSOR'S RETURN.**

**(b) Casualty Percentage.** For purposes of this Schedule the applicable Casualty Percentage shall be...

**4. TAX INDEMNITY.**

**5. SECURITY INTEREST.**

**6. LEASING ADDITIONAL EQUIPMENT.**

**7. ASSIGNMENT OF PURCHASE DOCUMENTS.**

MELAIV LTPF-CC05B 8-98



# MASTER EQUIPMENT LEASE
## AGREEMENT SCHEDULE

| LESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| Address<br>150 Cambridge Park Drive | 2 Gatehall Drive, Parsippany, NJ 07054 |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>E212580 | Schedule Number<br>00880 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|

Description of Items to be Leased (the Equipment)

Lucent Technologies Definity Sets,Packs & Epn and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00170 (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule, and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

| | Yes | No | | | |
|---|---|---|---|---|---|
| Option A .............................................. | ☒ | ☐ | | Total This Page | $97,729.15 |
| Lessee selects a fair market value purchase option and a fair rental value renewal option. | | | Attached ( ) Additional Pages | Sub Total(s) From | |
| Option B .............................................. | ☐ | ☒ | Total Purchase Price (Sum of total prices including installation/one-time charges) | | $97,729.15 |
| Lessee selects (i) a fixed price purchase option of either $_____ or _____% of the Total Purchase Price, and (ii) a fixed price renewal option of _____% of the periodic Rental Payment. | | | Advance Rent<br>$3,730.40 | | Rental Payment<br>$3,730.40 |
| THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Rental Payment Period<br>Monthly | | Latest Commencement Date<br>02/28/2000 |
| Equipment Location<br>9830 Patuxent Street, Columbia, MD 21046 | | | Length of Initial Term | 28 months | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF "-"IS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER –AS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORPORATION | NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| Lessee | |
| By: X _David B. Monaghan_ | By: X _(signature)_ |
| Lessee Authorized Signature<br>David B. Monaghan, Jr. | Lessor Authorized Signature<br>CHRISTINE WALKER   Acct Mgr |
| Print Name and Title<br>Vice President Finance | Print Name and Title<br>3-9-2000 |
| Date<br>2/28/00 | Date |

MELAIV – LTPF-CC05B 8/98

MELAIV LTPF-CC058 6-98

# MASTER EQUIPMENT LEASE AGREEMENT SCHEDULE

Lucent Technologies

| | | |
|---|---|---|
| LESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
| Address<br>150 Cambridge Park Drive | 2 Gatehall Drive, Parsippany, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>E212580 | Schedule Number<br>00890 |

| | |
|---|---|
| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Cha-ges |
| Description of Items to be Leased (the Equipment)<br>Lucent Technologies Definity Sets & Packs and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).<br>This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00520 (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule. | |

| | Yes | No |
|---|---|---|
| Option A | ☒ | ☐ |
| Lessee selects a fair market value purchase option and a fair rental value renewal option. | | |
| Option B | ☐ | ☒ |
| Lessee selects (i) a fixed price purchase option of either $_____ or _____% of the Total Purchase Price, and (ii) a fixed price renewal option of _____% of the periodic Rental Payment. | | |

THE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE.

Equipment Location
10 Moulton, Cambridge, MA 02140

| | |
|---|---|
| Total This Page | $44,724.20 |
| Sub Total(s) From Attached ( ) Additional Pages | |
| **Total Purchase Price** (Sum of total prices including installation/one-time charges) | $44,724.20 |
| Advance Rent<br>$1,094.42 | Rental Payment<br>$1,094.42 |
| Rental Payment Period<br>Monthly | Latest Commencement Date<br>02/28/2000 |
| Length of Initial Term 45 months | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

**BBN CORPORATION**
Lessee

By: X______________________
Lessee Authorized Signature

______________________
Print Name and Title

______________________
Date

**NEWCOURT COMMUNICATIONS FINANCE CORPORATION**

By: X______________________
Lessor Authorized Signature

______________________
Print Name and Title

______________________
Date

The terms and conditions set forth below shall app., Options A and B on the front of this Schedule; provided, however, that Lessee may select only one of the two aforementioned options. If Lessee selects Option A, the Tax Indemnity provision set forth below (Section 4) shall apply to this Schedule. If no selection is indicated on the front of this Schedule, Lessee shall be deemed to have selected Option A.

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as adjusted pursuant to Section 7 of the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule.

1. **OPTION A - FAIR MARKET VALUE PURCHASE AND RENEWAL OPTIONS.** (a) If Option A has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below); provided, however, that the foregoing renewal option may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2. **OPTION B - FIXED PRICE PURCHASE AND RENEWAL OPTIONS.** (a) If Option B has been selected, no Event of Default exists, no event has occurred and is continuing that with notice or the lapse of time or both would constitute an Event of Default, and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term (as defined in Section 3 below), Lessee shall have the following fixed price purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term for the amount specified on Page 1 of this Schedule (Sale Price); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months at the periodic Rental Payment amount specified in Option B on Page 1 of this Schedule or, if no such amount is specified, at Fair Rental Value (Renewal Rental Payment); provided, however, that the foregoing renewal option may not be exercised if Lessor reasonably determines that there has been a material adverse change in Lessee's business or financial condition since the Commencement Date. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with Section 18 of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Sale Price at least 45 days prior to the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term of this Schedule. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Renewal Rental Payment on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Sale Price as specified above; or (iii) return the Equipment to Lessor in accordance with Section 18 of the Agreement, the Applicable Term shall be extended for successive 90 day periods until Lessee returns the Equipment to Lessor in accordance with Section 18 of the Agreement or Lessor terminates this Schedule by 10 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 2, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in Section 25 of the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

3. **LESSOR'S RETURN.** (a) *Stipulated Loss Value.* If Section 13 of the Agreement provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 5% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) if Option A of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment; plus (iii) if Option B of this Schedule has been selected, the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the purchase option amount set forth on Page 1 of this Schedule. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price.

(b) *Casualty Percentage.* For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on Page 1 of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater.

4. **TAX INDEMNITY.** (a) If Option A has been selected, Lessor intends to take accelerated cost recovery deductions (Recovery Deductions) under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended (Code), and accelerated depreciation deductions under applicable state law (Depreciation Deductions). Accordingly, Lessee makes the following representations, warranties and covenants: (i) at the time Lessee accepts the Equipment pursuant to Section 3 of the Agreement, the Equipment will have been "placed in service" within the meaning of sections 167 and 168 of the Code; (ii) the Total Purchase Price shall qualify for Recovery Deductions and Depreciation Deductions (with the exception of any items that are excluded by specific language on Page 1 of this Schedule and any increase in the Total Purchase Price that is attributable to any accrued interest under a Financing Agreement); (iii) neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is, or will become a tax-exempt entity described in section 168 (h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date; and (iv) at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action (whether or not such act or omission is otherwise required by the Agreement) that results in a loss, reduction, deferral, recapture or other unavailability to Lessor of any part of the Recovery Deductions or Depreciation Deductions. If, because of a breach of this Section 4(a), Recovery Deductions or Depreciation Deductions are lost, reduced, deferred, recaptured or otherwise made unavailable to Lessor (Tax Loss), Lessee shall, upon demand by Lessor, promptly pay damages to Lessor. The amount of such damages shall be the amount necessary to provide Lessor with a Net Economic Return (as defined in Section 4(c) below) equal to the Net Economic Return that Lessor would have realized if it had not suffered a Tax Loss. A Loss or damage to the Equipment will constitute a breach of this Section 4(a) if it does not result in the payment of the Lessor's Return described in Section 13 of the Agreement.

(b) The amount of each periodic Rental Payment remaining to be paid during the Applicable Term (as previously adjusted pursuant to this Section 4(b)) shall be adjusted, upwards or downwards, if changes are made to the Code (including changes in the corporate income tax rates) or any regulations promulgated thereunder that affect the federal income tax consequences to Lessor that were contemplated by Lessor when it determined the amount of the periodic Rental Payment then in effect (Tax Law Change). The net effect of any adjustment under this Section 4(b) shall be to provide Lessor a Net Economic Return equal to the Net Economic Return that Lessor would have realized if no Tax Law Change had occurred.

(c) Any damages required by Section 4(a) above and any adjustment required by Section 4(b) above shall be in the amount necessary to provide Lessor a net after-tax yield, net after-tax cash flow and net after-tax book earnings (Net Economic Return) equal to the Net Economic Return Lessor would have realized with respect to the transaction contemplated by this Schedule if a Tax Loss or Tax Law Change (as applicable) had not occurred, assuming Lessee would fulfill all of its obligations hereunder, and shall be based upon the same assumptions and pricing analysis used by Lessor in determining the amount of the periodic Rental Payment then in effect, except to the extent such assumptions are affected by the Tax Loss or Tax Law Change (as applicable) at issue. Without limiting the generality of the foregoing, it shall be irrebuttably presumed that all income of Lessor for any year is subject to tax at the highest then applicable federal income tax rate generally applicable to corporations and that Lessor has sufficient taxable income to offset all deductions arising hereunder.

(d) With respect to any damages or adjustments calculated by Lessor as set forth above (Calculation Amount), at the request and expense of Lessee, Lessor shall submit the assumptions and calculations underlying any such Calculation Amount to Lessor's independent certified public accountants for verification of the maintenance of Lessor's Net Economic Return. Such accountants' determination that the Calculation Amount does or does not maintain Lessor's Net Economic Return (and, in the case of the latter, such accountants' determination of the adjusted amount that would so maintain such Net Economic Return) shall be binding upon Lessor and Lessee. Lessee agrees that any information provided to such accountants by Lessor constitutes private, proprietary and confidential property of Lessor and that no person other than Lessor and such accountants shall be entitled access thereto.

5. **SECURITY INTEREST.** If Option A has been selected, Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security or if Option B has been selected, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent.

6. **LEASING ADDITIONAL EQUIPMENT.** Lessee may request Lessor to finance the costs of any additional equipment by sending Lessor a purchase order or by contacting Lessor or the Seller by telephone or in writing. If the total cost of such additional equipment (Additional Equipment) is Twenty-Five Thousand Dollars or less and if Lessor agrees to lease such Additional Equipment to Lessee, Lessor will signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Length of Initial Term, the applicable purchase and renewal options and such other terms and conditions that apply to such lease. **LESSEE AGREES THAT IF LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE SHALL BE DEEMED TO HAVE (a) IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT, (b) AUTHORIZED LESSOR TO PAY THE SELLER FOR THE ADDITIONAL EQUIPMENT AND (c) AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS SCHEDULE.** If Lessee objects in the manner and within the timeframe set forth above, the Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Purchase Documents.

7. **ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. If Seller is not an affiliate of Lessor, Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

LTPF – TLS 12/98



Product Finance

Lucent Technologies

# LEASE SCHEDULE
## WITH FAIR MARKET VALUE
## PURCHASE OPTION

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>00910 |

**SELLER: LUCENT TECHNOLOGIES INC.**

Total Price Including Installation/One-Time Charges

### Description of Items to be Leased (the Equipment)

**Lucent Ultralink, Eprom & Wallboard** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number **00320** (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the Installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $52,407.40 |
|---|---|---|
| Additional Provisions | SubTotal(s) from Attached ( ) Additional Pages | |
| | Total Purchase Price (Sum of total prices including installation/one-time charges) | $52,407.40 |
| | Advance Rent<br>$0.00 | Rental Payment<br>$1,517.72 |
| Equipment Location<br>3 Vandergraf Rd, Burlington, MA 01803 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 |
| | Lease Term (Months) 38 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT, IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IF EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE:   GENUITY SOLUTIONS, INC. | LESSOR:   NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _(signature)_ | By: X _(signature)_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| Ira Parker, Chief Legal Counselor | Jean Cote, Account Manager |
| Print Name and Title | Print Name and Title |
| 6/30/00 | 6/30/00 |
| Date | Date |

PAGE 1 OF 2

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

**1. PURCHASE AND RENEWAL OPTIONS.** (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above, or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**2. LESSOR'S RETURN.** If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 6% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

**3. TAX BENEFITS.** Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated depreciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

**4. SECURITY INTEREST.** Lessee and Lessor intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

**5. LEASING ADDITIONAL EQUIPMENT.** Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

**6. ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

**7. FACSIMILES.** IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THIS SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

**8. CHATTEL PAPER.** If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

LTPF - TLS 12/98

# LEASE SCHEDULE
# WITH FAIR MARKET VALUE
# PURCHASE OPTION



Product Finance

Lucent Technologies

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>00940 |

SELLER: LUCENT TECHNOLOGIES INC.

Total Price Including Installation/One-Time Charges

Description of Items to be Leased (the Equipment)

**Lucent Definity Addition** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number **00170** (Primary Schedule).  Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $23,655.40 |
|---|---|---|
| Additional Provisions | SubTotal(s) from Attached ( ) Additional Pages | |
| | Total Purchase Price (Sum of total prices including Installation/one-time charges) | $23,655.40 |
| | Advance Rent<br>$0.00 | Rental Payment<br>$1,048.41 |
| Equipment Location<br>9861 Broken Land Pkwy, 1st Flr, Columbia, MD 21046 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 |
| | Lease Term (Months) 24 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSOR, AND BY THE LESSOR OR ITS AFFILIATE, AS LESSOR, AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IF EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

LESSEE:  GENUITY SOLUTIONS, INC.

By: X _____

Lessee Authorized Signature

_Ira Parker    Chief Legal Consultor_
Print Name and Title

_7 - 31 - 00_
Date

LESSOR:  NEWCOURT COMMUNICATIONS FINANCE CORPORATION

By: X _____

Lessor Authorized Signature

_Jean Cote    Account Manager_
Print Name and Title

_8/10/00_
Date

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

1. PURCHASE AND RENEWAL OPTIONS. (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above, or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2. LESSOR'S RETURN. If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessee's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 5% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

3. TAX BENEFITS. Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated depreciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

4. SECURITY INTEREST. Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

5. LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Lessor by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects to the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

6. ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

7. FACSIMILES. IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

8. CHATTEL PAPER. If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

.AIV LTPF-CC05B 8-98



Lucent Technologies

# ASTER EQUIPMENT LEASE
# GREEMENT SCHEDULE

| SEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| dress | 2 Gatehall Drive, Parsippany, NJ 07054 | |
| 0 Cambridge Park Drive | | |
| y / State / Zip | Lease Number | Schedule Number |
| ambridge, MA 02140 | E212580 | 00950 |

| ELLER: LUCENT TECHNOLOGIES INC. | | | Total Price Including Installation/One-Time Charges |
|---|---|---|---|

Description of Items to be Leased (the Equipment)
cent Technologies Definity G3si With Intuity and other related items, including any attachments, alterations, and
ditions thereto; any software license or rights; and any related documentation, all as may be more particularly
scribed in the final invoice(s) from the Seller(s).

| | Yes | No | | |
|---|---|---|---|---|
| ption A .......................... | ☒ | ☐ | Total This Page | $86,720.55 |
| ssee selects a fair market value purchase tion and a fair rental value renewal option. | | | Sub Total(s) From Attached (    ) Additional Pages | |
| ption B .......................... | ☐ | ☒ | Total Purchase Price (Sum of total prices including installation/one-time charges) | $86,720.55 |
| ssee selects (i) a fixed price purchase option either $_____ or _____% of the Total Purchase Price, id (ii) a fixed price renewal option of _____% the periodic Rental Payment. | | | Advance Rent $1,605.20 | Rental Payment $1,605.20 |
| HE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND THER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF HIS SCHEDULE. | | | Rental Payment Period Monthly | Latest Commencement Date 02/28/2000 |
| quipment Location 375 Mac Arthur Ct, Ste 400, Newport Beach, CA 92662 | | | Length of Initial Term    60 months | |

IIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER
PECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC. OR ANY AFFILIATE OR SUBSIDIARY
IEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND
ONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS); LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND
SSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS
CHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO
ECTION 23 OF THE AGREEMENT BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS
ND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS
EVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS
NDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW,
SSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER
ONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY
THER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| BBN CORPORATION | NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| Lessee | |
| X _David B Monaghan_ | By: X _CMWaller_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| David B. Monaghan, Jr. | CHRISTINE WALKER    Account Mgr |
| Print Name and Title | Print Name and Title |
| Vice President Finance | 3-9-2000 |
| Date    2/28/00 | Date |

LTPF – TLS 12/96



Product Finance

Lucent Technologies

# LEASE SCHEDULE
# WITH FAIR MARKET VALUE
# PURCHASE OPTION

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR:NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA  02140 | Lease Number<br>e212580 | Schedule Number<br>00980 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|
| **Description of Items to be Leased (the Equipment)** | |

Lucent Definity Addition and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00170 (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $81,195.19 |
|---|---|---|
| Additional Provisions | SubTotal(s) from Attached (   ) Additional Pages | |
| | Total Purchase Price<br>(Sum of total prices including installation/one-time charges) | $81,195.19 |
| | Advance Rent<br>$0.00 | Rental Payment<br>$3,598.57 |

| Equipment Location<br>9780 Patuxent Wood, Columbia, MD  21046 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 |
|---|---|---|
| | Lease Term (Months)  24 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/96. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/96 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IF EITHER HAS RENEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _(signature)_ | By: X _(signature)_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| Print Name and Title: Ira Parker  Chief Legal Counsel | Print Name and Title: Jean Cote, Account Manager |
| Date: 7-31-00 | Date: 8/10/00 |

Capitalized terms used in this Schedule that a   not otherwise defined herein shall have the meanings ascribed to them in    Master Equipment Lease Agreement or Standard Lease Agreement (Agree...ent) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

1. PURCHASE AND RENEWAL OPTIONS. (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed up⁻n by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was during the initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2. LESSOR'S RETURN. If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of: (i) an amount calculated by Lessor that is the present value (discounted at 5% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Section the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

3. TAX BENEFITS. Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated    ...reciation deductions under applicable state law (collectively, Tax Benefits).    ssee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

4. SECURITY INTEREST. Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

5. LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

6. ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

7. FACSIMILES. IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

8. CHATTEL PAPER. If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

LTPF – TLS 12/98



Product Finance

Lucent Technologies

# LEASE SCHEDULE
## WITH FAIR MARKET VALUE
## PURCHASE OPTION

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR:NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>01010 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|
| **Description of Items to be Leased (the Equipment)** | |

*Lucent Definity Prologix With Intuity Audix* and other related Items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final Invoice(s) from the Seller(s).

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE *PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL* OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $133,359.83 |
|---|---|---|
| Additional Provisions | SubTotal(s) from<br>Attached (     ) Additional Pages | |
| | Total Purchase Price<br>(Sum of total prices including<br>installation/one-time charges) | $133,359.83 |
| | Advance Rent<br>**$2,424.48** | Rental Payment<br>**$2,424.48** |
| Equipment Location<br>1600 International Drive Ste B, Mclean, VA 22102 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 |
| | Lease Term (Months) 60 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _____ | By: X _____ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| Ira Parker, Chief Legal Counselor | Jean Cote, Account Manager |
| Print Name and Title | Print Name and Title |
| 6/30/00 | 6/30/00 |
| Date | Date |

Capitalized terms used in this Schedule th... ...e not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

**1. PURCHASE AND RENEWAL OPTIONS.** (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**2. LESSOR'S RETURN.** If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 5% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. **This Section is not applicable if the Agreement is a Standard Lease Agreement.**

**3. TAX BENEFITS.** Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended (Code), and accelera... depreciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

**4. SECURITY INTEREST.** Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

**5. LEASING ADDITIONAL EQUIPMENT.** Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

**6. ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

**7. FACSIMILES.** IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

**8. CHATTEL PAPER.** If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

ELA-V LTPF-CCO5B 8-96

# Master Equipment Lease
## Agreement Schedule

 SEP 1 1 2000

BY: .......................


Product Finance

Lucent Technologies

| **ESSEE:** GENUITY SOLUTIONS, INC. | **LESSOR: Newcourt Communications Finance Corporation** | |
|---|---|---|
| dress | | |
| 150 CAMBRIDGE PARK DRIVE | **2 Gatehall Drive, Parsippany, NJ 07054** | |
| y / State / Zip | Lease Number | Schedule Number |
| CAMBRIDGE, MA 02140 | E212580 | 01020 |

| **ELLER:** LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|

### Description of Items to be Leased (the Equipment)

UCENT DEFINITY G3SI WITH INTUITY AUDIX and other related items, including any attachments, lterations, and additions thereto; any software license or rights; and any related ocumentation, all as may be more particularly described in the final invoice(s)from he Seller(s).

| | Yes | No | | |
|---|---|---|---|---|
| ption A...... | ☒ | ☐ | Total This Page | $ 283,493.95 |
| ssee selects a fair market value purchase ntion and a fair rental value renewal option. | | | Attached ( ) Sub Total(s) from Additional Pages | |
| | Yes | No | | |
| ption B...... | ☐ | ☒ | **Total Purchase Price** (Sum of total prices including installation/one-time charges) | **$ 283,493.95** |
| ssee selects (i) a fixed price purchase option either $_____ or _____ % of the Total Purchase Price, nd (ii) a fixed price renewal option of _____ % the periodic Rental Payment. | | | Advance Rent $ 5,153.92 | Rental Payment $ 5,153.92 |
| HE TERMS AND CONDITIONS OF THE FOREGOING OPTIONS AND OTHER PORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | | Rental Payment Period MONTHLY | Latest Commencement Date 09/07/2000 |
| quipment Location ONE LIBERTY PLAZA, 20TH FLOOR NEW YORK, NY 10006 | | | Length of Initial Term 60 MONTHS | |

IS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) 'AND BETWEEN LESSEE, AS LESSEE, AND LESSOR OR NEWCOURT CREDIT GROUP, INC, OR ANY AFFILIATE OR SUBSIDIARY THEREOF, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON E FRONT AND BACK OF THIS SCHEDULE. PURSUANT TO SUCH TERMS AND CONDITIONS ( WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS, LESSEE AGREES TO LEASE FROM SSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT, IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS HEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER PURSUANT TO SECTION 23 OF THE AGREEMENT BY LESSOR OR IY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSE'S OBLIGATIONS HEREUNDER. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND IARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR IAT IT MAY HAVE RIGHTS UNDER THE PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES IY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR IDIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| GENUITY SOLUTIONS, INC. | NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| Lessee | |
| X *Debra Speight by CM Trautright* | By: X *Keith Herman / X Cote* |
| Lessee Authorized Signature | Lessor Authorized Signature |
| ✓ DEBRA SPEIGHT, CIO | *Keith Herman Acct Mgr.* |
| Print Name and Title | Print Name and Title |
| ✓ 9/8/00 | 9/12/00 |
| Date | Date |

AQ00000 ~ A00000000010    Doc:CNT-P1 2000-11-28 00:00:00    MELAIV ~ LTPF-CC05B 8

MELAIV ~ LTPF-CC05B 8/98

8/9c

The terms and conditions set forth below shall app,    Options A and B on the front of this Schedule; provided, however, that Lessee may select only one of the two aforementioned options. If Lessee selects Option A, the Tax Indemnity provisions set forth below (Section 4) shall apply to this Schedule. If no selection is indicated on the front of this Schedule, Lessee shall be deemed to have selected Option A.

HPE – TLS 12/98

LEASE SCHEDULE
WITH FAIR MARKET VALUE
PURCHASE OPTION

OCT 30 2000



Product Finance

Lucent Technologies

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>01030 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|

| Description of Items to be Leased (the Equipment) | |
|---|---|
| **Definity Prologix Solutions With Intuity** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s). | |

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $92,030.13 |
|---|---|---|
| Additional Provisions | SubTotal(s) from<br>Attached (    ) Additional Pages | |
| | Total Purchase Price<br>(Sum of total prices including installation/one-time charges) | $92,030.13 |
| | Advance Rent<br>$0.00 | Rental Payment<br>$1,678.63 |
| Equipment Location<br>10 N 17th Street, Arlington, VA 22202 | Rental Payment Period<br>monthly | Latest Commencement Date<br>9/29/2000 |
| | Lease Term (Months) 60 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTFF-TLS 12/98. PURSUANT TO SUCH TERMS AND CONDITIONS WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS, LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTFF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _(signature)_ | By: X _(signature)_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| X CIO & SVP | Keith Herman Acct Mgr |
| Print Name and Title | Print Name and Title |
| 10/10/00 | 10/30/00 |
| Date | Date |

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

**1. PURCHASE AND RENEWAL OPTIONS.** (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**2. LESSOR'S RETURN.** If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 5% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 66% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

**3. TAX BENEFITS.** Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated [de]preciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or [an]y of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

**4. SECURITY INTEREST.** Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

**5. LEASING ADDITIONAL EQUIPMENT.** Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of purchaser under the applicable Supply Contract or Purchase Documents.

**6. ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

**7. FACSIMILES.** IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

**8. CHATTEL PAPER.** If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

LTPF - TLS 12/98



Product Finance

Lucent Technologies

# LEASE SCHEDULE
# WITH FAIR MARKET VALUE
# PURCHASE OPTION

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>01040 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|
| Description of Items to be Leased (the Equipment) | |

**Lucent Definity Addition** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00520 (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | **$57,135.40** |
|---|---|---|
| Additional Provisions | SubTotal(s) from<br>Attached ( ) Additional Pages | |
| | Total Purchase Price<br>(Sum of total prices including<br>Installation/one-time charges) | **$57,135.40** |
| | Advance Rent<br>**$0.00** | Rental Payment<br>**$1,579.79** |
| Equipment Location<br>10 Moulton, Cambridge, MA 02140 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 |
| | Lease Term (Months) 40 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE. TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE:    GENUITY SOLUTIONS, INC. | LESSOR:    NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _____<br>Lessee Authorized Signature | By: X _____<br>Lessor Authorized Signature |
| _Ira Parker  Chief Legal Counsel_<br>Print Name and Title | _Jean Cote   Account Manager_<br>Print Name and Title |
| _7-31-00_<br>Date | _8/10/00_<br>Date |

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence its lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

1. PURCHASE AND RENEWAL OPTIONS. (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Market Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Market Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or pledges by, through, or under Lessor.

2. LESSOR'S RETURN. If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 5% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 85% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

3. TAX BENEFITS. Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated depreciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

4. SECURITY INTEREST. Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

5. LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

6. ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

7. FACSIMILES. IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

8. CHATTEL PAPER. If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

TPF-TLS 12/98



Product Finance

Lucent Technologies

# LEASE SCHEDULE
## WITH FAIR MARKET VALUE
## PURCHASE OPTION

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address 150 Cambridge Park Drive | Address 2 GATEHALL DRIVE PARSIPPANY, NJ 07054 | |
| City / State / Zip Cambridge, MA 02140 | Lease Number o212580 | Schedule Number 01050 |

| SELLER: LUCENT TECHNOLOGIES INC. | | Total Price Including Installation/One-Time Charges |
|---|---|---|
| Description of Items to be Leased (the Equipment) | | |

**Lucent Definity Software Upgrade** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number **00170** (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $21,158.50 |
|---|---|---|
| Additional Provisions . | SubTotal(s) from Attached ( ) Additional Pages | |
| | Total Purchase Price (Sum of total prices including installation/one-time charges) | $21,158.50 |
| | Advance Rent $0.00 | Rental Payment $902.41 |
| Equipment Location 9780 Patuxent Wood, Columbia, MD 21046 | Rental Payment Period monthly | Latest Commencement Date 6/30/2000 |
| | Lease Term (Months) 25 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/96. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/96 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE:   GENUITY SOLUTIONS, INC. | LESSOR:   NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _(signature)_ | By: X _(signature)_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| Ira Parker, Chief Legal Counselor | _(handwritten)_ Cote, Account Manager |
| Print Name and Title | Print Name and Title |
| 6/30/00 | 6/30/00 |
| Date | Date |

Page 1 of 2

Capitalized terms used in this Schedule th... ..e not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

1. PURCHASE AND RENEWAL OPTIONS. (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be excluded from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2. LESSOR'S RETURN. If the Agreement is a Master Equipment Lease Agreement and it it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 6% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

3. TAX BENEFITS. Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated depreciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

4. SECURITY INTEREST. Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's assigns may file as a financing statement a lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

5. LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less, and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects to the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Document.

6. ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor, any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

7. FACSIMILES. IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND MAKES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THIS SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

8. CHATTEL PAPER. If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

LTPF - TLS 12/98

# LEASE SCHEDULE
## WITH FAIR MARKET VALUE
## PURCHASE OPTION



Lucent Technologies

Product Finance

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>01060 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|

Description of Items to be Leased (the Equipment)

Lucent Definity Upgrade & Cms and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

This Schedule describes a coterminous add-on (Addition) to the Equipment described in the Schedule Number 00320 (Primary Schedule). Accordingly (a) if Lessee purchases or renews the Equipment described in the Primary Schedule, Lessee shall, as applicable, purchase the Addition or renew this Schedule for a Renewal Term of the same length as the Renewal Term of the Primary Schedule; and (b) if Lessee is required to pay Lessor the Lessor's Return with respect to the Primary Schedule, Lessee shall pay Lessor the Lessor's Return with respect to this Schedule.

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $225,432.22 |
|---|---|---|
| Additional Provisions | SubTotal(s) from<br>Attached ( ) Additional Pages | |
| | Total Purchase Price<br>(Sum of total prices including installation/one-time charges)) | $225,432.22 |
| | Advance Rent<br>$0.00 | Rental Payment<br>$6,528.52 |
| Equipment Location<br>3 Vandergraf Rd, Burlington, MA 01803 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 |
| | Lease Term (Months) 38 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98, PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IF EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _____<br>Lessee Authorized Signature<br>Ira Parker, Chief Legal Counselor<br>Print Name and Title<br>6/30/00<br>Date | By: X _____<br>Lessor Authorized Signature<br>Ken Cote, Account Manager<br>Print Name and Title<br>6/30/00<br>Date |

Capitalized terms used in this Schedule th... ...e not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

1. PURCHASE AND RENEWAL OPTIONS. (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, if Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2. LESSOR'S RETURN. If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 5% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

3. TAX BENEFITS. Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated depreciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

4. SECURITY INTEREST. Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

5. LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a one writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF LESSEE DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Document.

6. ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

7. FACSIMILES. IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSEE BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

8. CHATTEL PAPER. If multiple copies of this Schedule are signed by Lessee and Lessor, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

LTPF - TLS 12/98



Product Finance
Lucent Technologies

# LEASE SCHEDULE
# WITH FAIR MARKET VALUE
# PURCHASE OPTION

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>01070 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|
| Description of Items to be Leased (the Equipment) | |

Lucent Definity G3r With Intuity Audix and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $1,737,465.01 |
|---|---|---|
| Additional Provisions | SubTotal(s) from | |
| | Attached (   ) Additional Pages | |
| | Total Purchase Price<br>(Sum of total prices including installation/one-time charges) | $1,737,465.01 |
| | Advance Rent<br>$31,587.11 | Rental Payment<br>$31,587.11 |
| Equipment Location<br>100 Metro North, Woburn, MA 01801 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 |
| | Lease Term (Months) 60 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE:  GENUITY SOLUTIONS, INC. | LESSOR:  NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _(signature)_ | By: X _(signature)_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| IRA PARKER, Chief Legal Counselor | Richard E. Klugherz, Director of Operation |
| Print Name and Title | Print Name and Title |
| 6-30-00 | 7/31/2000 |
| Date | Date |

PAGE 1 OF 2

Capitalized terms used in this Schedule that are otherwise defined herein shall have the meanings ascribed to them in aster Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

1. PURCHASE AND RENEWAL OPTIONS. (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Market Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2. LESSOR'S RETURN. If the Agreement is a Master Equipment Lease Agreement and it it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 6% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 85% for a Term of less than 36 months; 60% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

3. TAX BENEFITS. Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated ...ciation deductions under applicable state law (collectively, Tax Benefits). L ...e promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

4. SECURITY INTEREST. Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

5. LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

6. ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessee) and any agreement(s) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

7. FACSIMILES. IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

8. CHATTEL PAPER. If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

LTPF-3' S 12/98



Product Finance

Lucent Technologies

# LEASE SCHEDULE
# WITH FAIR MARKET VALUE
# PURCHASE OPTION

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>01080 |

| SELLER: LUCENT TECHNOLOGIES INC. | | Total Price Including Installation/One-Time Charges |
|---|---|---|
| Description of Items to be Leased (the Equipment) | | |

**Lucent Definity Prologix With Intuity Audix** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | | Total This Page | $114,946.79 |
|---|---|---|---|
| Additional Provisions | | SubTotal(s) from | |
| | Attached ( ) Additional Pages | | |
| | | Total Purchase Price (Sum of total prices including installation/one-time charges) | $114,946.79 |
| | Advance Rent<br>$2,089.73 | Rental Payment<br>$2,089.73 | |
| Equipment Location<br>9425 Se 36th, Mercer Island, WA 98040 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 | |
| | Lease Term (Months) 60 | | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X | By: X |
| Lessee Authorized Signature | Lessor Authorized Signature |
| Ira Parker, Chief Legal Counselor | Jean Cote    Account Manag. |
| Print Name and Title | Print Name and Title |
| 6/30/00 | 6/30/00 |
| Date | Date |

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

**1. PURCHASE AND RENEWAL OPTIONS.** (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessor and Lessee shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 90 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**2. LESSOR'S RETURN.** If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 6% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing Term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

**3. TAX BENEFITS.** Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated depreciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

**4. SECURITY INTEREST.** Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

**5. LEASING ADDITIONAL EQUIPMENT.** Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

**6. ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

**7. FACSIMILES.** IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

**8. CHATTEL PAPER.** If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of this Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

LTPF – TLS 12/98



Product Finance

Lucent Technologies

# LEASE SCHEDULE
## WITH FAIR MARKET VALUE
## PURCHASE OPTION

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212560 | Schedule Number<br>01090 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|
| Description of Items to be Leased (the Equipment) | |

**Lucent Definity Prologix With Intuity Audix** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

IL Tax of $8625.37 is included in the Total Purchase Price.

Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment.

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page: | $132,332.59 |
|---|---|---|
| Additional Provisions | SubTotal(s) from<br>Attached (    ) Additional Pages | |
| | Total Purchase Price<br>(Sum of total prices including installation/one-time charges) | $132,332.59 |
| | Advance Rent<br>$2,405.81 | Rental Payment<br>$2,405.81 |
| Equipment Location<br>8725 Higgins Rd Ste 555, Rosemont, IL 60018 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 |
| | Lease Term (Months) 60 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98, PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE:   GENUITY SOLUTIONS, INC. | LESSOR:   NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _____<br>Lessee Authorized Signature<br>Ira Parker, Chief Legal Counselor<br>Print Name and Title<br>6/30/00<br>Date | By: X _____<br>Lessor Authorized Signature<br>Jean Cote    Account Manager<br>Print Name and Title<br>6/30/00<br>Date |

Page 1 of 1)

Capitalized terms used in this Schedule th... ...e not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule and shall commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

1. PURCHASE AND RENEWAL OPTIONS. (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term-at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) If Lessee reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term.and return the Equipment to Lessor-in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew.this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value-on the same date each period that the Rental Payment was due during the initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to.Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, if Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease, Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2. LESSOR'S RETURN. If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for.purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 6% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as-· described above and calculated by Lessor as-of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

3. TAX BENEFITS. Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and acceler... ... depreciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that'neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

4. SECURITY INTEREST. Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

5. LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessee a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or-less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects to the manner and within the timeframes described above, such Additional Lease shall be-null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

6. ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessee or Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessor shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor.any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

7. FACSIMILES. IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE-BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

8. CHATTEL PAPER. If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code-in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original

©Copyright 1996 by Newcourt Financial.

LTPF – TLS 12/98



Product Finance

**Lucent Technologies**

# LEASE SCHEDULE
## WITH FAIR MARKET VALUE
## PURCHASE OPTION

| LESSEE: BBN CORPORATION | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>01100 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|

### Description of Items to be Leased (the Equipment)

**Lucent Definity Prologix** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

IL Tax of $5,064.60 is included in the Total Purchase Price.

"Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment."

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | | $78,352.17 |
|---|---|---|---|
| Additional Provisions | SubTotal(s) from Attached ( ) Additional Pages | | |
| | Total Purchase Price (Sum of total prices including installation/one-time charges) | | $78,352.17 |
| | Advance Rent<br>$1,424.44 | Rental Payment<br>$1,424.44 | |
| Equipment Location<br>120 S Lasalle St 18th Flr, Chicago, IL  60603 | Rental Payment Period<br>monthly | Latest Commencement Date<br>6/30/2000 | |
| | Lease Term (Months)  60 | | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE. TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE:  BBN CORPORATION | LESSOR:  NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _(signature)_ | By: X _(signature)_ |
| Lessee Authorized Signature<br>Ira Parker, Chief Legal Counselor | Lessor Authorized Signature<br>Jean Cote, Account Manager |
| Print Name and Title | Print Name and Title |
| 6/30/00 | 6/30/00 |
| Date | Date |

Capitalized terms used in this Schedule the ... are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

1. PURCHASE AND RENEWAL OPTIONS. (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the Renewal Term, the Renewal Term, Lessee and Lessor shall agree upon the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

2. LESSOR'S RETURN. If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 6% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question, to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)); plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by the Total Purchase Price. For purposes of this Schedule, the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 65% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

3. TAX BENEFITS. Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended (Code), and acceler... depreciation deductions under applicable state law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

4. SECURITY INTEREST. Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

5. LEASING ADDITIONAL EQUIPMENT. Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing or an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

6. ASSIGNMENT OF PURCHASE DOCUMENTS. Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessor shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

7. FACSIMILES. IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE-BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DE-LIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

8. CHATTEL PAPER. If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

LTPF :TLS 12/98 · ·



RECEIVED
SEP 11 2000
BY



Product Finance

**Lucent Technologies**

# LEASE SCHEDULE
# WITH FAIR MARKET VALUE
# PURCHASE OPTION

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>01110 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|
| Description of Items to be Leased (the Equipment) | |

**Lucent Definity Prologix With Intuity Audix** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).

"Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment."

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $109,137.66 |
|---|---|---|
| Additional Provisions | SubTotal(s) from Attached ( ) Additional Pages | |
| | Total Purchase Price (Sum of total prices including installation/one-time charges) | $109,137.66 |
| | Advance Rent<br>$1,984.12 | Rental Payment<br>$1,984.12 |
| Equipment Location<br>8899 University Lane, San Diego, CA 92122 | Rental Payment Period<br>monthly | Latest Commencement Date<br>8/30/2000 |
| | Lease Term (Months) 60 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED, AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _Otto Westenfield_ | By: X _Keith Herman_ |
| Lessee Authorized Signature<br>OTTO WESTENFIELD, DIR. IT<br>Print Name and Title | Lessor Authorized Signature<br>Keith Herman Acct Mgr.<br>Print Name and Title |
| 9/8/00<br>Date | 9/12/00<br>Date |

Capitalized terms used in this Schedule that are not otherwise defined herein shall have the meanings ascribed to them in the Master Equipment Lease Agreement or Standard Lease Agreement (Agreement) identified by the Lease Number specified on the front of this Schedule. References in this Schedule to Total Purchase Price and Rental Payment shall mean the estimates thereof specified on the front of this Schedule, as they may be adjusted pursuant to the Agreement. With respect to the Equipment described on the front of this Schedule, the terms and conditions of this Schedule shall prevail over any conflicting or inconsistent terms and conditions in the Agreement and/or any amendments thereto entered into prior to the execution of this Schedule. Lessee must commence this lease on or before the date Lessor's pricing and credit approvals expire (Latest Commencement Date).

**1. PURCHASE AND RENEWAL OPTIONS.** (a) If no Event of Default exists and Lessee delivers to Lessor an irrevocable written election notice at least 90 days prior to the expiration of the Applicable Term, Lessee shall have the following purchase and renewal options: (i) Lessee may purchase all (but not less than all) of the Equipment at the end of the Applicable Term at Fair Market Value (as defined below); or (ii) Lessee may renew this Schedule for a Renewal Term of not less than 12 months to be agreed upon by Lessor and Lessee at Fair Rental Value (as defined below) if Lessor reasonably determines that no material adverse change in Lessee's business or financial condition has occurred since the beginning of the Term. If Lessee decides not to purchase the Equipment or renew this Schedule at the end of the Applicable Term, it shall provide Lessor with irrevocable written notice thereof at least 90 days prior to the expiration of the Applicable Term and return the Equipment to Lessor in accordance with the terms of the Agreement.

(b) If Lessee elects to purchase the Equipment, Lessee shall pay Lessor the Fair Market Value on or before the expiration of the Applicable Term and shall make all other payments required hereunder during the remaining Term. If Lessee elects to renew this Schedule, Lessee and Lessor shall enter into a supplement to this Schedule to confirm the applicable Fair Rental Value and the length of the applicable Renewal Term. Throughout the Renewal Term, Lessee shall pay Lessor the Fair Rental Value on the same date each period that the Rental Payment was due during the Initial Term.

(c) If Lessee fails to: (i) provide Lessor with the 90 day notice required above; or (ii) pay Lessor the Fair Market Value as specified above; or (iii) return the Equipment to Lessor in accordance with the terms of the Agreement, the Applicable Term shall be extended for an additional 3 month period and thereafter for successive one month periods until Lessee delivers the Equipment to Lessor in accordance with the Agreement or Lessor terminates this Schedule by 30 days' written notice to Lessee. If this Schedule is extended pursuant to the preceding sentence, Lessee shall continue to pay Lessor the periodic Rental Payments in effect prior to the expiration of the Applicable Term and all other provisions of the Agreement and this Schedule (including Lessee's purchase and renewal options) shall continue to apply.

(d) Fair Rental Value and Fair Market Value for the Equipment shall be determined by agreement of Lessor and Lessee, or, at Lessee's sole expense, by an independent appraiser selected by Lessor. Fair Rental Value means the periodic amount that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Fair Market Value means the total price that would be paid for the Equipment in an arm's length transaction between an informed and willing buyer (other than a used equipment dealer) under no compulsion to buy and an informed and willing seller under no compulsion to sell. In determining Fair Rental Value or Fair Market Value, the costs of removing the Equipment from the Equipment Location and moving it to a new location shall not be deducted from its value.

(e) If Lessee elects to purchase the Equipment and has completely fulfilled the terms and conditions of the Agreement and this Section 1, then on the last day of the Applicable Term: (i) this Schedule shall terminate and, except as provided in the Agreement, Lessee shall be relieved of all obligations under this Schedule; and (ii) Lessor shall transfer all of its interest in the Equipment to Lessee "AS IS, WHERE IS," and without any warranty, express or implied from Lessor, other than the absence of any liens or claims by, through, or under Lessor.

**2. LESSOR'S RETURN.** If the Agreement is a Master Equipment Lease Agreement and if it provides that Stipulated Loss Value is a component of Lessor's Return, for purposes of this Schedule the Stipulated Loss Value of the Equipment shall equal the sum of (i) an amount calculated by Lessor that is the present value (discounted at 6% per annum compounded monthly) of all Rental Payments from the date of the Loss or Event of Default in question to the originally anticipated date of expiration of the then existing term of this Schedule (whether it be the Initial Term or any Renewal Term (Applicable Term)), plus (ii) the present value (computed as described above and calculated by Lessor as of the date of the Loss or Event of Default in question) of the casualty value (determined as set forth below) of the Equipment. The casualty value of the Equipment shall be determined by multiplying the applicable Casualty Percentage (as specified below) by all Rental Payments from the date of the Loss or Event of Default to the applicable Casualty Percentage value Total Purchase Price. For purposes of this Schedule the applicable Casualty Percentage shall be (unless otherwise specified on the front of this Schedule) 66% for a Term of less than 36 months; 50% for a Term of 36 months or greater, but less than 48 months; 40% for a Term of 48 months or greater, but less than 60 months; 30% for a Term of 60 months or greater, but less than 72 months; and 20% for a Term of 72 months or greater. This Section is not applicable if the Agreement is a Standard Lease Agreement.

**3. TAX BENEFITS.** Lessee and Lessor intend that Lessor shall be entitled to all of the Federal and state tax benefits associated with the ownership of the Equipment, including but not limited to accelerated cost recovery deductions under sections 167(a) and 168(b) (1) of the Internal Revenue Code of 1986, as amended

(Code), and accelerated depreciation deductions under applicable Federal law (collectively, Tax Benefits). Lessee promises that at no time during the Term of this Schedule will Lessee (or any of its successors, sublessees or assigns) take any action or fail to take any action that would result in a loss, reduction, deferral, recapture or other unavailability to Lessor (or any consolidated group with which Lessor files tax returns) of any part of the Tax Benefits. Lessee also represents and warrants that neither Lessee, any of its affiliates, nor any of its successors, sublessees or assigns was, is or will become a tax-exempt entity described in section 168(h) (2) of the Code at any time during the Term of this Schedule or the five years preceding the Commencement Date.

**4. SECURITY INTEREST.** Lessor and Lessee intend the transaction described in this Schedule to be a true lease, and Lessee hereby authorizes Lessor to file a financing statement to give public notice of Lessor's ownership of the Equipment. If such transaction is deemed by a court of competent jurisdiction to be a lease intended for security, to secure payment and performance of Lessee's obligations under the Agreement and this Schedule, Lessee grants Lessor and its assigns a purchase money security interest in the Equipment and in all attachments, accessories, additions, substitutions, products, replacements, rentals and proceeds (including insurance proceeds) therefrom as well as a security interest in any other equipment financed pursuant to the Agreement or any other agreement between Lessor and Lessee (collectively, Collateral). Lessee shall execute and timely deliver to Lessor financing statements or any other documents Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. Lessor or Lessor's agent may file as a financing statement any lease document (or copy thereof, where permitted by law) Lessor deems necessary to perfect or protect Lessor's security interest in the Collateral. If Lessee fails to execute any such document, Lessor or Lessor's agent is hereby authorized to file any of the foregoing signed only by Lessor or Lessor's agent. LESSEE HEREBY APPOINTS LESSOR OR LESSOR'S DESIGNEE AS LESSEE'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON LESSEE'S BEHALF, FINANCING STATEMENTS COVERING ANY EQUIPMENT SUBJECT TO THIS SCHEDULE OR THE AGREEMENT.

**5. LEASING ADDITIONAL EQUIPMENT.** Lessee may request Lessor to finance the costs of additional equipment (whether or not such items are additions to the Equipment) by sending Lessor a purchase order or by contacting us or the Seller by telephone or via a writing of an electronic or facsimile transmission. If the estimated total cost of such equipment (Additional Equipment) is $25,000 or less and if Lessor agrees to provide such financing, Lessor shall signify its agreement by preparing and sending to Lessee a writing (Additional Lease) describing the Additional Equipment and specifying the amount and frequency of the Rental Payments, the Lease Term, the end of term options and such other terms and conditions that apply to such lease. LESSEE AGREES THAT IF THE LESSOR DOES NOT RECEIVE A WRITTEN OBJECTION TO THE ADDITIONAL LEASE FROM THE LESSEE WITHIN 10 DAYS AFTER THE DATE OF THE ADDITIONAL LEASE, LESSEE WILL BE DEEMED TO HAVE IRREVOCABLY ACCEPTED THE ADDITIONAL EQUIPMENT AND AGREED THAT, EXCEPT AS OTHERWISE SPECIFIED IN THE ADDITIONAL LEASE, SUCH ADDITIONAL LEASE SHALL BE GOVERNED BY ALL OF THE TERMS AND CONDITIONS OF THIS LEASE. If Lessee objects in the manner and within the timeframes described above, such Additional Lease shall be null and void and Lessee shall be responsible for fulfilling the obligations of the purchaser under the applicable Supply Contract or Purchase Documents.

**6. ASSIGNMENT OF PURCHASE DOCUMENTS.** Lessee hereby assigns to Lessor all of Lessee's right and interests in and to (a) the Equipment described in this Schedule and (b) any Purchase Documents (including any purchase order issued by Lessor as Lessee's agent) relating thereto. Except for the obligation to pay Seller for the Equipment if (and only if) the Equipment is accepted by Lessee pursuant to the Agreement, such assignment shall not include any of the obligations of the purchaser under the Purchase Documents and Lessee shall at all times remain liable to Seller to perform all of the duties and obligations of the purchaser under the Purchase Documents to the same extent as if an assignment had not occurred. Lessee shall obtain Seller's written consent to such assignment and written agreement that upon any return of the Equipment to Lessor, at no additional fee or charge Seller will either (y) grant Lessor any applicable license relating to the use of any software, technical information, confidential business information and other documentation (collectively, License) and permit Lessor to assign such License to any subsequent end-user of the Equipment; or (z) grant any subsequent end-user of the Equipment an applicable License, subject to Seller's then-current licensing provisions. Lessee shall at all times remain liable to Seller as the licensee under the License, and Lessee shall not have any obligation thereunder unless and until such License is provided to Lessor in accordance herewith.

**7. FACSIMILES.** IF A SIGNED COPY OF THIS SCHEDULE IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION, IT WILL BE BINDING ON LESSEE. HOWEVER, LESSOR WILL NOT BE BOUND UNTIL IT ACCEPTS THE SCHEDULE BY MANUALLY SIGNING IT OR BY PURCHASING THE EQUIPMENT, WHICHEVER OCCURS FIRST. LESSEE WAIVES NOTICE OF LESSOR'S ACCEPTANCE AND WAIVES ITS RIGHT TO RECEIVE A COPY OF THE ACCEPTED SCHEDULE. IF LESSEE DELIVERS THIS SCHEDULE TO LESSOR BY FACSIMILE TRANSMISSION, LESSEE ACKNOWLEDGES THAT LESSOR IS RELYING ON LESSEE'S REPRESENTATION THAT THE SCHEDULE HAS NOT BEEN CHANGED. LESSEE AGREES THAT, NOTWITHSTANDING ANY RULE OF EVIDENCE TO THE CONTRARY, IN ANY HEARING, TRIAL OR PROCEEDING OF ANY KIND WITH RESPECT TO THIS SCHEDULE, LESSOR MAY PRODUCE A COPY OF THE SCHEDULE TRANSMITTED TO IT BY FACSIMILE TRANSMISSION THAT HAS BEEN MANUALLY SIGNED BY LESSOR AND SUCH SIGNED COPY SHALL BE DEEMED TO BE THE ORIGINAL.

**8. CHATTEL PAPER.** If multiple copies of this Schedule are signed by Lessor and Lessee, only one copy of the Schedule shall be marked "Original" (Original), and all other copies shall be marked as, and shall be, duplicates. To the extent that this Schedule constitutes chattel paper (as such term is defined in the Uniform Commercial Code in effect in any applicable jurisdiction), no security interest therein may be created through the transfer or possession of any copy other than the Original.

©Copyright 1998 by Newcourt Financial.

LTPF-TLS 12/98

# LEASE SCHEDULE
## WITH FAIR MARKET VALUE
## PURCHASE OPTION



Product Finance

**Lucent Technologies**

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION | |
|---|---|---|
| Address<br>150 Cambridge Park Drive | Address<br>2 GATEHALL DRIVE<br>PARSIPPANY, NJ 07054 | |
| City / State / Zip<br>Cambridge, MA 02140 | Lease Number<br>e212580 | Schedule Number<br>01120 |

| SELLER: LUCENT TECHNOLOGIES INC. | Total Price Including Installation/One-Time Charges |
|---|---|
| **Description of Items to be Leased (the Equipment)**<br><br>**Lucent Definity Prologix With Intuity Audix** and other related items, including any attachments, alterations, and additions thereto; any software license or rights; and any related documentation, all as may be more particularly described in the final invoice(s) from the Seller(s).<br><br>  Notwithstanding any terms to the contrary contained in the Agreement or this Schedule, the Equipment will be deemed irrevocably accepted by you upon Lessor's receipt of the Seller's invoice for charges related to the installation of the Equipment. | |

| THIS TRANSACTION IS INTENDED TO BE A TRUE LEASE. THE TERMS AND CONDITIONS OF LESSEE'S FAIR MARKET VALUE PURCHASE OPTION, ITS FAIR RENTAL VALUE RENEWAL OPTION, AND OTHER IMPORTANT PROVISIONS ARE SET FORTH ON THE BACK OF THIS SCHEDULE. | Total This Page | $164,339.95 |
|---|---|---|
| Additional Provisions | SubTotal(s) from<br>Attached ( ) Additional Pages | |
| | Total Purchase Price<br>(Sum of total prices including installation/one-time charges) | $164,339.95 |
| | Advance Rent<br>$2,987.70 | Rental Payment<br>$2,987.70 |
| Equipment Location<br>364 Ferguson Drive, Mountain View, CA 94043 | Rental Payment Period<br>monthly | Latest Commencement Date<br>7/31/2000 |
| | Lease Term (Months) 60 | |

THIS SCHEDULE SHALL BE GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER EQUIPMENT LEASE AGREEMENT OR STANDARD LEASE AGREEMENT REFERENCED BY THE LEASE NUMBER SPECIFIED ABOVE (AGREEMENT) BY AND BETWEEN LESSEE OR ITS AFFILIATE, AS LESSEE, AND LESSOR OR ITS AFFILIATE, AS LESSOR, AND BY THE TERMS AND CONDITIONS SET FORTH ON THE FRONT AND BACK OF THIS SCHEDULE, WHICH IS LESSOR'S STANDARD FORM LTPF-TLS 12/98. PURSUANT TO SUCH TERMS AND CONDITIONS (WHICH LESSEE ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS), LESSEE AGREES TO LEASE FROM LESSOR (AS SPECIFIED BELOW) AND LESSOR AGREES TO LEASE TO LESSEE THE ABOVE REFERENCED EQUIPMENT. IT IS UNDERSTOOD AND AGREED THAT THE TERMS AND CONDITIONS OF THIS SCHEDULE MAY BE DIFFERENT FROM THE TERMS AND CONDITIONS OF PRIOR SCHEDULES AND THAT ANY ASSIGNMENT OR TRANSFER OF THIS SCHEDULE BY LESSOR OR ANY ASSIGNEE SHALL NOT MATERIALLY CHANGE LESSEE'S OBLIGATIONS HEREUNDER. LESSEE AGREES THAT IF A COPY OF THIS SCHEDULE IS SIGNED BY IT AND THE FRONT OF THE COPY IS DELIVERED TO LESSOR BY FACSIMILE TRANSMISSION OR OTHERWISE, TO THE EXTENT ANY PROVISIONS ARE MISSING OR ILLEGIBLE OR CHANGED (AND NOT INITIALED BY BOTH PARTIES), THE TERMS AND CONDITIONS OF LESSOR'S FORM LTPF-TLS 12/98 IN USE ON THE DATE LESSOR RECEIVES THE COPY SIGNED BY LESSEE WILL BE THE TERMS AND CONDITIONS OF THE SCHEDULE. LESSEE REPRESENTS AND WARRANTS THAT IT SHALL LOOK ONLY TO THE SELLER FOR ANY AND ALL CLAIMS AND WARRANTIES RELATING TO THE EQUIPMENT AND THAT IT EITHER HAS REVIEWED, APPROVED AND RECEIVED A COPY OF THE APPLICABLE SUPPLY CONTRACT OR PURCHASE DOCUMENTS OR HAS BEEN INFORMED BY LESSOR THAT IT MAY HAVE RIGHTS UNDER THE SUPPLY CONTRACT OR PURCHASE DOCUMENTS AND MAY CONTACT SELLER FOR A DESCRIPTION OF SUCH RIGHTS. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON LESSEE BY ARTICLE 2A OF THE UCC AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE THAT MAY LIMIT OR MODIFY THE LESSOR'S RIGHTS AS DESCRIBED IN THE AGREEMENT, THIS SCHEDULE OR ANY OTHER FUNDAMENTAL AGREEMENT (AS DEFINED IN THE AGREEMENT).

| LESSEE: GENUITY SOLUTIONS, INC. | LESSOR: NEWCOURT COMMUNICATIONS FINANCE CORPORATION |
|---|---|
| By: X _(signature)_ | By: X _(signature)_ |
| Lessee Authorized Signature | Lessor Authorized Signature |
| _Ira Parker Chief Legal Counsel_<br>Print Name and Title | _Sean Cote, Account Manger_<br>Print Name and Title |
| 7-31/00<br>Date | 8/10/00<br>Date |

PAGE 1 OF 2

EFiled: Jan 23 2006 11:05AM EST
Transaction ID 10389304

**SUPERIOR COURT CIVIL CASE INFORMATION STATEMENT (CIS)**

COUNTY:    ( N )    K    S        CIVIL ACTION NUMBER:_____

Civil Case Code __CDBT__        Civil Case Type  __Debt/Breach of Contract__

(SEE REVERSE SIDE FOR CODE AND TYPE)

| Caption: | Name and Status of Party filing document: |
|---|---|
| **CIT Communications Finance Corporation,** | **CIT Communications Finance Corp. - Plaintiff** |
| **Plaintiff,** | Document Type:(E.G.; COMPLAINT;ANSWER WITH COUNTERCLAIM) |
| **v.** | **Complaint** |
| **Level 3 Communications, LLC and** | Non-Arbitration **X** |
| | (CERTIFICATE OF VALUE MAY BE REQUIRED) |
| **Level 3 Communications, Inc.,** | Arbitration ___  Mediation ___    Neutral Assessment ___ |
| **Defendants.** | DEFENDANT (CIRCLE ONE) **ACCEPT    REJECT** |
| | JURY DEMAND  YES **X**    No ____ |
| | TRACK ASSIGNMENT REQUESTED (CIRCLE ONE) |
| | EXPEDITED    (STANDARD)  COMPLEX |

| ATTORNEY NAME(S): | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS |
|---|---|
| **Andrew C. Kassner, Howard A. Cohen** | **NONE** |
| ATTORNEY ID(S): | |
| **Del. Bar #4507, #4082** | |
| FIRM NAME: | EXPLAIN THE RELATIONSHIP(S): |
| **Drinker Biddle & Reath LLP** | |
| ADDRESS: | |
| **1100 N. Market Street, Suite 1000** | |
| **Wilmington, DE  19801-1254** | |
| TELEPHONE NUMBER: | |
| **(302) 467-4200** | OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT: |
| FAX NUMBER: | **NONE** |
| **(302) 467-4201** | |
| E-MAIL ADDRESS: | |
| **howard.cohen@dbr.com** | (IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE) |

**THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.**

Revised 6/2002

# EXHIBIT B

## IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| CIT COMMUNICATIONS FINANCE CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06C-01-236 (JRS) |
| v. | ) ) | NOTICE OF REMOVAL TO FEDERAL COURT |
| LEVEL 3 COMMUNICATIONS, LLC and : LEVEL 3 COMMUNICATIONS, INC., | ) ) | |
| Defendants. | ) ) | |

### DEFENDANTS LEVEL 3 COMMUNICATIONS, LLC AND
### LEVEL 3 COMMUNICATIONS, INC.'S
### NOTICE OF FILING PETITION FOR REMOVAL

PLEASE TAKE NOTICE that Level 3 Communications, LLC and Level 3 Communications, Inc., defendants in the above-captioned action, have on this day filed a Notice of Removal, a copy of which is annexed hereto, in the office of the Clerk of the United States District Court for the District of Delaware.

With the filing of this Notice, this action has been removed to the United States District Court for the District of Delaware and, pursuant to 28 U.S.C. § 1446(d), there shall be no further proceedings in this Court.

Dated: February 24, 2006

BLANK ROME LLP

Steven L. Caponi (DSBA No. 3484)
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801
(302) 425-6408
(302) 428-5016 (Fax)

Attorneys for Defendants
Level 3 Communications, LLC and
Level 3 Communications, Inc.

## CERTIFICATE OF SERVICE

I, Steven L. Caponi, hereby certify that on this 24th day of February, 2006, copies of Defendants Level 3 Communications, LLC and Level 3 Communications, Inc.'s Notice Of Removal To Federal Court was served by hand upon:

Howard A. Cohen, Esquire
Drinker Biddle & Reath
1100 N. Market Street
Suite 1000
Wilmington, DE 19801

Steven L. Caponi (# 3484)

2

900200.00001/40160123v.1

## <u>CERTIFICATE OF SERVICE</u>

I, Steven L. Caponi, hereby certify that on this 24th day of February, 2006, copies of Defendants Level 3 Communications, LLC and Level 3 Communications, Inc.'s Notice Of Removal were served by hand upon:

Howard A. Cohen, Esquire
Drinker Biddle & Reath
1100 N. Market Street
Suite 1000
Wilmington, DE 19801

_____
Steven L. Caponi (# 3484)

3

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
CIT Communications Finance Corporation

**DEFENDANTS**
Level 3 Communications, LLC
Level 3 Communications, Inc.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
TRACT OF LAND INVOLVED.

**(c) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)**
Howard A. Cohen, Esquire (DSBA No. 4082)
Drinker Biddle & Reath
1100 N. Market Street
Suite 1000
Wilmington, DE 19801
(302) 467-4200

ATTORNEYS (IF KNOWN)
Steven L. Caponi (DSBA No. 3484)
Blank Rome LLP
1201 N. Market Street
Suite 800
Wilmington, DE 19801
(302) 425-6400

**II. BASIS OF JURISDICTION**    (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign County | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN**    (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT**    (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury Med. Malpractice<br>☐ 365 Personal Injury – Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br><br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R. R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Arts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence HABEAS CORPUS:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS – Third Party 26 USC 7609 | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Removal is based on 28 U.S.C. Section 1441(a) and 1452; Complaint asserts claims for breach of contract

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    CHECK YES only if demanded in complaint:    JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
February 24, 2006

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT# _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 0 6 - 1 2 1 _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___2___ COPIES OF AO FORM 85.

FEB 2 4 2006
_____
(Date forms issued)

_____
(Signature of Party or their Representative)

Joe  S.  Salters
_____
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action