IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CIT COMMUNICATIONS FINANCE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 06-121-SLR ) |
| LEVEL 3 COMMUNICATIONS, LLC, and LEVEL 3 COMMUNICATIONS, INC., | ) ) ) ) ) |
| Defendants. | ) |

Howard A. Cohen, Esquire, Drinker Biddle & Reath LLP, Wilmington, Delaware. Counsel for Plaintiff.

Steven L. Caponi, Esquire, Blank Rome LLP, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: March 29, 2007
Wilmington, Delaware

**ROBINSON, Chief Judge**

## I. INTRODUCTION

On January 23, 2006, plaintiff CIT Communications Finance Corporation filed suit against Level 3 Communications, LLC ("Level 3, LLC"), and Level 3 Communications, Inc. ("Level 3, Inc.") (collectively, "defendants")[1] in the Superior Court of the State of Delaware, alleging breach of contract, unjust enrichment, and conversion ("the State action"). (D.I. 1, ex. A) Defendants, citing 28 U.S.C. § 1441(a),[2] filed a notice of removal to the United States District Court for the District of Delaware on February 24, 2006. (D.I. 1) Presently before the court is plaintiff's motion to remand to Superior Court because this court allegedly lacks subject matter jurisdiction over the action at bar. (D.I. 5) The court has jurisdiction over plaintiff's motion pursuant to 28 U.S.C. § 1447(c).

---

[1] Level 3, Inc. is the parent company of Level 3, LLC. Plaintiff avers that Level 3, Inc. "controls" Level 3, LLC "and has caused [it] to do the things" alleged in the complaint. (D.I. 1, ex. A at ¶ 18) According to plaintiff, "[a]t all relevant times, each [d]efendant was an agent of the other and performed the acts [alleged in the complaint] within the course and scope of such agency." (Id. at ¶ 16)

[2] "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

## II. BACKGROUND[3]

### A. The Bankruptcy Proceeding

In December 1995, plaintiff agreed to lease a telephone system (the "Telephone System Lease") and related equipment (the "Equipment"), as identified in the "Master Equipment Lease," to Genuity, Inc. and Genuity Solutions, Inc. ("Genuity," or "Debtors"). (D.I. 1, ex. A at ¶ 6) Plaintiffs did so "in return for Genuity's agreement, among other things, to make monthly installment lease payments to [plaintiff] in the amount of $215,716.56 (the 'Monthly Payments')." (Id. at ¶ 7)

On November 27, 2002 (the "Petition Date"), Genuity filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). See In re Genuity, Inc., No. 02-43588 (Bankr. S.D.N.Y. Nov. 27, 2002). That same date, Genuity filed a motion asking the Bankruptcy Court to approve, among other things, an asset purchase agreement with defendants which included the sale of substantially all of the Debtors' assets to defendants, including defendants' assumption of certain executory contracts and unexpired leases (the "Sale Motion"). (D.I. 10, ex. A; Bankr. D.I. 24[4]) Plaintiff filed an objection to the Sale Motion on January 15, 2003.[5]

---

[3]When ruling on a plaintiff's motion to remand to state court, "the district court must assume as true all factual allegations of the complaint." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citations omitted). Therefore, where applicable, the following facts have been taken from plaintiff's complaint, as filed in the Superior Court of Delaware. (See D.I. 1, ex. A)

[4]Parallel citations to docket items from the bankruptcy proceeding will be identified with the designation "Bankr. D.I."

[5]Plaintiff objected to the Sale Motion because it believed the Debtors had failed to accurately identify the leases and schedules involved in the proposed transaction. Plaintiff also contended that, because "[t]he Debtors [had] failed to provide [plaintiff]

2

(D.I. 10, ex. B; Bankr. D.I. 337) On January 24, 2003, the Bankruptcy Court issued an order approving the Sale Motion. (D.I. 10, ex. C; Bankr. D.I. 438) In response to plaintiff's objection, the Bankruptcy Court entered a stipulation and order (the "Stipulation") requiring, inter alia, that the Debtors pay plaintiff "undisputed post-petition arrearages" and set aside a certain amount of money "to cover disputed post-petition arrearages" and insure against "alleged sums due to [plaintiff] pursuant to Section 365(b)(1) of the Bankruptcy Code . . . in the event that the [Lease] Agreement is assumed by the Debtors." (D.I. 10, ex. D at 2-3; Bankr. D.I. 459 at 2-3) On October 1, 2003, the Debtors filed an amended joint consolidated plan of liquidation (the "Plan") (D.I. 10, ex. E; Bankr. D.I. 1673), which was confirmed by the Bankruptcy Court in an order signed October 21, 2003 (the "Confirmation Order") (D.I. 10, ex. F; Bankr. D.I. 1830). The Plan became effective on December 2, 2003 (the "Effective Date"), at which time the Debtors were liquidated and "all [of their] stock and stock options [were] cancelled." (Bankr. D.I. 1843)

---

with adequate assurance of future performance[,] . . . . it [was] impossible to determine whether the purchaser [had] the financial wherewithal to make the future payments which [would] become due under the Lease and Schedules the Debtors [sought] to assign." (D.I. 10, ex. B at 2-3)

3

Between April 1, 2003 and January 5, 2004, plaintiff filed a pre-petition claim (which it later amended),[6] and two administrative claims[7] against the Debtors. Plaintiff's claims sought various types of damages arising out of the Master Equipment Lease. (D.I. 10 at 4-5) On September 22, 2004, the GLT Liquidating Trust (the "Trust"), the Debtors' successor in interest,[8] objected to plaintiff's claims on the grounds that plaintiff was "seeking recoveries for which [it was] not entitled." (D.I. 10, ex. K at ¶ 9; Bankr. D.I. 2394 at ¶ 9) Plaintiff filed its defenses to the Trust's "10th Omnibus Objection" on January 21, 2005. (D.I. 10, ex. L; Bankr. D.I. 2579) According to defendants, "the contested [claims] are currently pending in the Bankruptcy Court." (D.I. 10 at 5)

**B. The State Action**

Plaintiff is a Delaware corporation with its principle place of business in the State of New Jersey. (D.I. 1, ex. A at ¶ 1) Defendants are a limited liability company and a

---

[6]Claim No. 2954 stated that "[o]n or before the Petition Date, the Debtors owed [plaintiff] past due payments and arrears through the Petition Date pursuant to the leases." (D.I. 10, ex. I at 3 ¶ 3) Plaintiff later filed an amendment, Claim No. 6167, in order to change the estimated amount of the pre-petition claim to $4,733,672.21. (Id., ex. J at 1)

[7]Claim No. 5937, filed on October 14, 2003, sought "post[-]petition rent and other charges due under various lease agreements and schedules for telephone communications equipment and other ancillary items" which accrued prior to August 1, 2003; plaintiff estimates this amount to be $759,476.68. (D.I. 10, ex. G at 1, 3) Plaintiff lodged its final administrative claim against the Debtors (Claim No. 6180) on January 5, 2004. This claim, which requests administrative expenses arising on or after August 1, 2003, as well as "the fair market value of the equipment that [had] not been returned [to it]" by the Debtors, sought payment of $788,490.77. (Id., ex. H at 1)

[8]The Trust, which was established by the Plan, submits that one of its purposes is to "manage the settlement of, and distribution on, all creditor claims" against the Debtors. (D.I. 10, ex. K at ¶ 6)

4

corporation organized under the laws of the State of Delaware.[9] (Id. at ¶¶ 2-3) In January 2003, as part of the bankruptcy proceeding, the Debtors sold their assets to defendants; said assets included "some or all of the Equipment" leased to them by plaintiff, "as well as [the Debtors'] obligations [to plaintiff] under the Telephone System Lease." (Id. at ¶¶ 10-11) As a result of this purchase, defendants allegedly took possession of the Equipment, and plaintiff maintains that, "[i]n accordance with the terms of the sale and as required by the Telephone System Lease, [defendants were] required to make the Monthly Payment to [plaintiff] for the Equipment." (Id. at ¶¶ 12-13) Plaintiff has sued defendants for breach of contract, unjust enrichment, and conversion in the Superior Court of the State of Delaware because, it claims, defendants have neither made the required Monthly Payments nor complied with plaintiff's demand that they return the Equipment. (Id. at ¶¶ 14-15, 19-28) Plaintiff's complaint seeks compensatory and other monetary damages; pre- and post-judgment interest; and "[s]uch further relief that the Court may deem just and proper." (Id. at ¶ 29)

---

[9]According to plaintiffs, the Superior Court has personal jurisdiction over defendants under 10 Del. C. § 3104, which proclaims that a court of the State of Delaware

> may exercise personal jurisdiction over any nonresident, or a personal representative [thereof], who in person or through an agent . . . [c]auses tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State . . . .

Id. § 3104(c)(4).

5

## C. Removal to Federal Court

Defendants removed the action at bar to federal court because, they allege, "[t]he bases for relief asserted by the plaintiff in its action arise out of factual allegations related to [the] pending bankruptcy proceeding . . . ." (D.I. 1 at ¶¶ 1, 3) In other words, defendants assert that this court has subject matter jurisdiction over plaintiff's suit because it "is an action of a civil nature in which the District Courts of the United States have been given jurisdiction in that it is related to a case under Title 11 of the United States Code within the meaning of 28 U.S.C. § 1334."[10] (Id. at ¶ 2)

Plaintiff avers that it "filed its complaint in the Delaware Superior Court because the [d]efendants are organized under Delaware law; and [plaintiff]'s claims are based solely on state law." (D.I. 6 at 1) According to plaintiff, its claims against defendants "exist independent of Genuity's bankruptcy," meaning that this court does not have subject matter jurisdiction over the case at bar under § 1334 and should remand it to State court. (Id. at 2) Even if the court **does** have "related to" jurisdiction, plaintiff argues, it is imperative upon the court to remand the action at bar under the principles of either mandatory or permissive abstention, as defined in 28 U.S.C. § 1334(c). (Id. at 8-11)

---

[10]Under 28 U.S.C. § 1452, "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." Id. § 1452(a). Section 1334 provides, in pertinent part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Id. § 1334(b). In the action at bar, the court is concerned only with the question of whether the State action is **related to** a case under title 11.

## III. STANDARD OF REVIEW

The exercise of removal jurisdiction is governed by 28 U.S.C. § 1441(a). The statute is strictly construed, requiring remand to state court if any doubt exists over whether removal was proper. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104 (1941). A court will remand a removed case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The party seeking removal bears the burden to establish federal jurisdiction. See Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citations omitted); Zoren v. Genesis Energy, L.P., 195 F. Supp. 2d 598, 602 (D. Del. 2002). In determining whether remand based on improper removal is appropriate, the court "must focus on the plaintiff's complaint at the time the petition for removal was filed," and assume all factual allegations therein as true. Steel Valley, 809 F.2d at 1010 (citing Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985)).

## IV. DISCUSSION

### A. Pertinent Case Law

In order for this court to have subject matter jurisdiction over the action at bar, the claims presented in the State action must be "related to" the Genuity bankruptcy proceeding. In a recent holding, the United States Court of Appeals for the Third Circuit "addresse[d] the scope of 'related to' jurisdiction of the bankruptcy court for post-confirmation claims brought on behalf of a litigation trust against an accounting firm" for malpractice. Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), 372 F.3d 154, 156 (3d Cir. 2004). The debtor was not a party to the action; since the alleged

7

malpractice occurred after the bankruptcy court had confirmed the debtor's reorganization plan, "the debtor's estate no longer exist[ed]." Id. at 157. The plaintiff argued that the malpractice claim was "related to" the bankruptcy proceeding, since "any recovery obtained in this action would necessarily become Trust assets," which might then be distributed "to the beneficiaries of the Litigation Trust, who were the former creditors of the debtor's estate." Id. Defendant, meanwhile, claimed that the Litigation Trust, "a legally distinct entity, [was] not a continuation of the bankruptcy estate for jurisdictional purposes." Id. Furthermore, defendant asserted, "the debtor [was] only tangentially affected by [the] malpractice action after it assigned away its interests in the litigation claims, and the Litigation Trust beneficiaries traded away their creditor status to attain rights to the Trust's assets." Id.

The bankruptcy court in In re Resorts International "characterized the matter as a post-confirmation dispute between two non-debtors involving state law claims that did not affect the 'administration of the estate, property of the estate, or liquidation of assets of the estate.'" Id. at 159 (quoting Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.), Adv. No. 97-2283, slip. op. at 21 (Bankr. D. N.J. Jan 4, 2002)). It, therefore, "rejected 'related to' jurisdiction because the claims could not have had any 'conceivable effect on the administration of the estate,' and because the dispute would not significantly affect the consummation of the Reorganization Plan." Id. (citing In re Resorts Int'l, Adv. No. 97-2283, slip. op. at 29-32).

The Third Circuit declared that "the seminal case for determining the boundaries of 'related to' jurisdiction" was its 1984 decision in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984).[11] In re Resorts Int'l, 372 F.3d at 164. In Pacor, the court stated that

> [t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding **could conceivably have any effect on the estate being administered in bankruptcy**. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Pacor, 743 F.2d at 994 (emphasis added) (citing In re Hall, 30 B.R. 799, 802 (M.D. Tenn. 1983); In re General Oil Distributors, Inc., 21 B.R. 888, 892 n.13 (Bankr. E.D.N.Y. 1982); In re U.S. Air Duct Corp., 8 B.R. 848, 851 (Bankr. N.D.N.Y. 1981); 1 Collier on Bankruptcy ¶ 3.01 at 3-49)). The Third Circuit later explained that "[a] key word in this test is 'conceivable.' Certainty, or even likelihood, is not a requirement." In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991) (citing In re Wolverine Radio Co., 930 F.2d 1132, 1143 (6th Cir. 1991)).

"On the other hand," Pacor cautioned, "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy

---

[11]Although the United States Supreme Court overturned Pacor on other grounds, see Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995), the Third Circuit stated in In re Resorts International that "Things Remembered does not disturb the authority of Pacor on the points for which we cite it. In fact, the Pacor test 'has been enormously influential' as a 'cogent analytical framework' relied upon by our sister circuits more than any other case in this area of the law." In re Resorts Int'l, 372 F.3d at 164 n.6 (quoting In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1181 (3d Cir. 1986)).

9

estate does not bring the matter within the scope of section 1471(b)[12]," because "[j]udicial economy itself does not justify federal jurisdiction." Id. (citing Aldinger v. Howard, 427 U.S. 1, 15 (1976)). The United States Supreme Court, citing Pacor with approval, stated that a "proceeding need not necessarily be against the debtor or against the debtor's property" for "related to" jurisdiction to apply; however, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor." Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995).

"After confirmation of a reorganization plan, retention of bankruptcy jurisdiction may be problematic. This is so," the In re Resorts International court stated, "because, under traditional Pacor analysis, bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates 'the logical possibility that the estate will be affected.'" In re Resorts Int'l, 372 F.3d at 165 (internal citations omitted). While, "[a]t the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred," the Third Circuit reiterated that "courts do not usually apply Pacor's 'effect on the bankruptcy estate' test so literally as to entirely bar post-confirmation bankruptcy jurisdiction." Id. Instead, "the essential inquiry" with regard to post-confirmation causes of action "appears to be whether there is a **close nexus to the bankruptcy plan or proceeding** sufficient to uphold bankruptcy court jurisdiction over the matter." Id. at 166-67 (emphasis added). "Matters that affect the interpretation, implementation, consummation, execution, or administration of the

---

[12]The statute analyzed in Pacor, 28 U.S.C. § 1471(b) (1982), was a predecessor of 28 U.S.C. § 1334(b), and used almost identical language.

confirmed plan will typically have the requisite close nexus. Under those circumstances, bankruptcy court jurisdiction would not raise the specter of 'unending jurisdiction' over continuing trusts."[13] Id. at 167.

### B. Analysis[14]

According to defendants, who bear the burden of demonstrating subject matter jurisdiction, "[i]f plaintiff has any claim against [them], it clearly arises out of the Master Equipment Lease, and related schedules, with the Debtors. Those schedules were rejected by the Debtors and [p]laintiff has filed the [administrative] [c]laims to recover unpaid lease payments and the value of unreturned equipment against the Debtors in

---

[13]For example, in In re Resorts International, 199 B.R. 113 (Bankr. D. N.J. 1996), there was a "sufficiently close nexus to the plan or proceeding to uphold bankruptcy court jurisdiction post-confirmation" because "the Bankruptcy Court was required to construe and enforce provisions of the Plan to resolve a post-confirmation dispute over whether the Litigation Trust or the debtor was entitled to accrued interest." In re Resorts Int'l, 372 F.3d at 167 (examining In re Resorts Int'l, 199 B.R. at 120-25).

[14]In addition to opposing plaintiff's motion to remand, defendants "submit" that the court should "defer decision on the Remand Motion and transfer venue of the Removed Action to the Southern District of New York." (D.I. 10 at 14) According to defendants, "[t]he Bankruptcy Court is uniquely positioned to determine whether [p]laintiff's claims asserted in the Removed Action are duplicative of the Bankruptcy Claims, whether the claims in the Removed Action relate to the Bankruptcy Case, and whether [p]laintiff's prosecution outside of the Bankruptcy Court is merely an attempt to forum shop." (Id. at 2) To the extent that this request constitutes a formal motion for transfer, it is denied. See Lone Star Indus., Inc. v. Liberty Mut. Ins. Co., 131 B.R. 269, 273 (D. Del. 1991) ("The court's jurisdiction over a matter must be established before non-jurisdictional issues can be addressed. This principle dictates that the court first determine, as a preliminary matter, whether the Superior Court case was properly removed." (citation omitted)); accord Shendock v. Director, Office Workers' Comp. Programs, 893 F.2d 1458, 1467 (3d Cir. 1990) ("Absent statutory authority, the traditional general rule that a court may not transfer a matter over which it lacks jurisdiction governs." (citation omitted)).

11

the Bankruptcy Court." (D.I. 10 at 6) Defendants point to certain sections of the Confirmation Order which provide, inter alia, that

> "the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases after the Effective Date to the extent that it is legally permissible, including, without limitation, . . . . to determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases," and "[t]o determine all applications, motions, adversary proceedings, contested matters, actions, Causes of Action and any other litigated matters instituted in the Chapter 11 Cases, including any remands.

(Id., ex. F at ¶¶ 25(e)-(f)) The Sale Order contains a similar provision.[15] (Id., ex. C at ¶ 32) Therefore, defendants claim, "[t]o the extent that [p]laintiff is claiming damages resulting from a rejection of the Master Equipment Lease schedules, that claim falls within the jurisdiction expressly retained by the Bankruptcy Court." (Id. at 6) This statement ignores the principle enumerated in In re Resorts International, that

> [r]etention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction. But neither the bankruptcy court nor the parties can write their own jurisdictional ticket. Subject matter jurisdiction "cannot be conferred by consent" of the parties. Coffin v. Malvern Fed. Sav. Bank, 90 F.3d 851, 854 (3d Cir. 1996). . . . [I]f a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has jurisdiction in a confirmation or other order. [In re Continental Airlines, Inc., 236 B.R. 318, 323 (Bankr. D. Del.1999), aff'd, 2000 WL 1425751 (D. Del. Sept. 12, 2000)]; accord United States Trustee

---

[15]In the Sale Order, the Bankruptcy Court stated that it

retains jurisdiction to enforce and implement the terms and provisions of the Purchase Agreement . . . in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser, (b) compel assumption of the Assumed Liabilities by the Purchaser, (c) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein, and (d) interpret, implement and enforce the provisions of this Sale Order.

(D.I. 10, ex. C at ¶ 32)

12

v. Gryphon at the Stone Mansion, 216 B.R. 764, 769 (W.D. Pa. 1997) ("A retention of jurisdiction provision within a confirmed plan does not grant a bankruptcy court jurisdiction."), aff'd, 166 F.3d 552 (3d Cir.1999).

In re Resorts Int'l, 372 F.3d at 161. If this court does not have "related to" jurisdiction over the State action, the retention of jurisdiction clauses in the bankruptcy proceeding are "fundamentally irrelevant." Id.

Plaintiff and the Debtors entered into the Master Equipment Lease and schedules long before the Debtors filed for bankruptcy. The bankruptcy petition did not automatically free the Debtors from their contractual obligations to plaintiff; consequently, when they allegedly failed to fulfill their obligations under the Master Equipment Lease, plaintiff filed administrative claims in the bankruptcy proceeding in an attempt to recover for "past due payments and arrears." Those administrative claims, however, can only logically seek damages accrued **while the Debtors were still the lessees** under the Master Equipment Lease; once the Debtors sold their interest in the Lease and the Equipment to defendants, they were no longer liable to plaintiff for future breaches.[16] Defendants fail to recognize that plaintiffs are alleging two separate contractual breaches, one attributable to the Debtors (before they sold their assets),

---

[16]The Bankruptcy Court's order approving the Sale Motion noted repeatedly that, upon the sale's closing date, all rights and liabilities under the Master Equipment Lease would transfer to defendants (unless expressly exempted), while the Debtors would remain solely liable for anything occurring before the closing date. (See, e.g., D.I. 10, ex. C at ¶ 10 ("The [defendants] shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets, other than as expressly set forth in the Purchase Agreement."); id. at ¶ 24 ("Notwithstanding anything to the contrary in this Sale Order, upon assumption of the Assumed Contracts and Assumed Leases, [defendants are] assuming all liabilities arising under the Assumed Contracts and Assumed Leases arising and accruing on and after the applicable Assumption Date."))

13

and the other for defendants' subsequent, **independent** failure to make the Monthly Payments to plaintiff after purchasing those assets. The fact that defendants originally acquired the Lease and Equipment from lessees who were going through bankruptcy does not change the fact that they had a contractual liability to plaintiffs which they allegedly breached; indeed, an identical dispute could easily have arisen completely outside the context of a bankruptcy proceeding.

Defendants further argue that "[t]he question of whether [they] acquired any of the [E]quipment leased to the Debtors under the Master Equipment Lease cannot be determined without reference to the terms of the Purchase Agreement and Sale Order. The construction of the Purchase Agreement, however, remains within the jurisdiction of the Bankruptcy Court pursuant to" the retention of jurisdiction provisions in the Confirmation and Sale Orders. (D.I. 10 at 7) "Thus," defendants argue, "any determination of whether [defendants are] liable to [plaintiff] for damages arising under the Master Equipment Lease should be made by the Bankruptcy Court." (Id.)

The court finds this argument unpersuasive. Upon the effective date of the Sale Agreement, defendants either acquired the Equipment and the Debtors' obligations to plaintiff, making the Master Equipment Lease the contract at issue in the State action; or they did not, in which case defendants cannot be liable to plaintiff under the causes of action alleged.[17] The fact that a court may need to **read** the Sale Agreement in order to determine this issue does not mean the court will have to "construe" or "interpret" any

---

[17] If defendants mean to imply that the effect of the Sale Agreement on their relationship with plaintiff is somehow more complicated than the court's characterization above, they have proffered no examples or evidence to that effect in their brief.

14

documents integral to the bankruptcy proceeding. Regardless, defendants have not pointed to any provisions of the Sale Agreement, the Plan, or any other document from the bankruptcy proceeding that will require construction in an action by one non-debtor alleging breach of contract, conversion, and unjust enrichment by another non-debtor under the terms of a lease created seven years before the Petition Date.

The ties between the State action and the bankruptcy proceeding are attenuated at best, and defendants' argument that the results of the State action could "conceivably" affect the Debtors' estate seeks to expand the meaning of that term farther than is reasonable. The outcome of the State action will not "affect the interpretation, implementation, consummation, execution, or administration of the confirmed [P]lan" in the bankruptcy proceeding; defendants' "belief" that, "to the extent [plaintiff] is entitled to any recovery under the Master Equipment Lease, it is from the Debtors," and their assertion that they "will [thus] be required to implead the Debtors as third-party defendants,"[18] does not change this. (D.I. 10 at 8)

---

[18]This assertion also ignores the fact that, technically, the Debtors no longer exist and, therefore, cannot be impleaded as third-party defendants. Although defendants could implead the Debtors' successor in interest (the Liquidating Trust), the Trust's "connection to the bankruptcy is not identical to that of the estate." In re Resorts Int'l, 372 F.3d at 169. As part of the Stipulation in response to plaintiff's objection to the Sale Motion, the Bankruptcy Court required the Debtors to segregate enough money to cover their potential liability to plaintiff. (D.I. 10, ex. D at 2-3) Subsequently, in the Sale Order, the Bankruptcy Court stated that "the fact that any Cure Amount Objection is not resolved shall not prevent or delay the occurrence of any Assumption Date or the assumption or assignment of any Assumed Contract or Assumed Agreement, and the objectors' only recourse after the relevant Assumption Date shall be to the Segregated Amounts." (D.I. 10, ex. C at ¶ 21) Therefore, even the Bankruptcy Court itself determined that the Debtors' liability for breaches of the Master Equipment Lease ended on the Assumption Date, a fact that distances plaintiff's post-Assumption Date claims against defendants even farther from the bankruptcy proceeding.

15

Taking all of the factual allegations contained in plaintiff's complaint as true, defendants have failed to demonstrate the requisite "close nexus" between the State action and the bankruptcy proceeding. Consequently, the court finds that it does not have "related to" subject matter jurisdiction over the action at bar,[19] and plaintiff's motion to remand the present case to the Superior Court of Delaware (D.I. 5) is granted.

## V. CONCLUSION

For the reasons stated above, plaintiff's motion to remand is granted. An appropriate order shall issue.

---

[19]Because it does not have subject matter jurisdiction over the matter at bar, the court will not address the issue of abstention.